2012 CO 27

Jesse Lloyd REYNOLDS; Stella Jenine Reynolds; Jesse Lloyd Reynolds and Stella Jenine Reynolds, as Co–Trustees of Jesse Lloyd Reynolds Revocable Trust; Jesse Lloyd Reynolds and Stella Jenine Reynolds, as Co–Trustees of Stella Jenine Reynolds Revocable Trust; Nortonville Cattle Company; Martin Cattle Company; W & K Reed & Co.; Dean Reynolds; Georgina Reynolds, as Trustee of Phillip B. Reynolds Trust; Penny Sue Reed Harper; Douglas Warren Reed; Marvin Bruce Reed; Allison E. Reed Boyack; Carl Thomas Reed; Jason Keith Reed; Kelly Reed; and Alamosa—La Jara Water Conservancy District, Plaintiffs–Appellants

v.

Craig COTTEN, Division Engineer, Water Division 3; Dick Wolfe, State Engineer; C.G. Betenbough; Jessie D. Crowther; Martille Faatz; Ralph Hawkins; La Mont Morgan; Ted Morrison; Dennis M. Mortensen; Dennis Q. Mortensen; Judy Parrish; Kent Shawcroft; Crowther Family Limited Partnership; La Jara Seepage Diversion Ditch Company; Miller Ditch Company; State of Colorado, Division of Wildlife; and all unknown persons who claim or may claim an interest in the subject matter of this action, Defendants–Appellees

Craig Cotten, Division Engineer, Water Division 3, Appellee Pursuant to C.A.R. 1(e).

No. 10SA393.

Supreme Court of Colorado, En Banc.

April 16, 2012.

Lester, Sigmond, Rooney & Schwiesow, Erich Schwiesow, Alamosa, Colorado, Attorneys for Plaintiff–Appellants.

Office of the Attorney General, John W. Suthers, Attorney General, Autum Lee Bernhardt, Assistant Attorney General, Patrick Kowaleski, Assistant Attorney General, Denver, Colorado, Attorneys for Defendant–Appellee State Engineer.

S.W. Atencio and Associates, P.C., Stephane Walter Atencio, Alamosa, Colorado, Attorneys for Defendant–Appellee Alamosa–La Jara Water Conservancy District.

Hamilton Faatz and Waller, PC, Clyde A. Faatz, Jr., Conor P. Boyle, Greenwood Village, Colorado, Attorneys for Defendant–Appellees C.G. Betenbough, Jessie D. Crowther (only as to his interest in San Luis Valley Ditch No. 1 (La Jara Seepage Diversion Ditch)), Martille Faatz, Ralph Hawkins, La Mont Morgan, Ted Morrison, Dennis M. Mortenson, Dennis Q. Mortensen, Judy Parrish, Kent Shawcroft, Crowther Family Limited Partnership, La Jara Seepage Diversion Ditch Company, and Miller Ditch Company.

Justice COATS delivered the Opinion of the Court.

¶ 1 Reynolds and the owners of several other ditches diverting water from La Jara Creek appealed directly to this court from an order of the water court denying their claim for declaratory relief. The plaintiff-ditch owners sought a declaration to the effect that their appropriative rights to La Jara Creek water were not limited to water flowing into the Creek from the San Luis Valley Drain Ditch. Without directly addressing the merits of their claim, the water court granted summary judgment in favor of the State and

Division Engineers, and other defendants, on the grounds that substantially the same issue had already been litigated and decided against the plaintiff-ditch owners in a prior declaratory judgment action involving the same parties or their predecessors in interest. More particularly, the water court concluded that all of the water rights of the parties in La Jara Creek were not only at issue but were in fact finally determined in the prior litigation, and therefore the plaintiff-ditch owners' current claim of entitlement to non-drain native La Jara Creek water had been implicitly resolved against them in the judgment concluding that litigation.

¶ 2 Because the plaintiff-ditch owners' entitlement to non-drain native La Jara Creek water was not actually determined in the prior litigation, either expressly or by necessary implication, the summary judgment of the water court is reversed and the case is remanded for further proceedings.

## I.

¶ 3 In 2008, following several years of disputes with the Division Engineer for Water Division No. 3 over their right to divert native water from La Jara Creek, the owners of the Reynolds Ditch, the Reynolds–Reed Ditch, the Reed No. 1 Ditch and First Enlargement, the Reed No. 2 Ditch and First Enlargement, and the Murphy–Crowther Ditch, all filed a claim for declaratory relief. They sought a declaration of their rights under two prior decrees, to the effect that the subject ditches were entitled to divert all native waters in La Jara Creek for which they were in priority, whether or not those waters derived from the San Luis Valley Drain Ditch. In response to a motion for joinder by the Engineers, the water court ordered that all of the parties to the former proceedings in which those decrees were entered, or their successors in interest, be named and served as defendants. The parties filed cross-motions for summary judgment, and in a 23–page order, the water court granted the Engineers' motion, finding the plaintiff-ditch owners to be estopped from further litigating their entitlement to non-drain native La Jara Creek water.

¶ 4 In its own order granting summary judgment, the water court in the instant case discussed in detail the 42–page order in *Colorado v. Reed*, No. W–3894 (Colo. Dist. Ct., Water Div. 3, 1982), a declaratory judgment action filed by the State Engineer in 1977, involving the same parties and concerning the proper administration of the lower La Jara Creek. In that earlier proceeding, the water court construed the two decrees on which the ditch owners rely in this case—one from 1952 and the other from 1960. In resolving the Engineers' claim for declaratory relief, as well as the multiple cross-claims and counterclaims in that case, the water court in W–3894 summarized the lengthy history of appropriations and litigation concerning La Jara Creek, reaching back to the 1880s.

¶ 5 As particularly relevant here, it found that in the early 1920s the natural flow of La Jara Creek was substantially increased by construction of the San Luis Valley Drain Ditch. The drain ditch, or simply the "Drain," collected stagnant water, which had resulted in boggy and alkaline conditions along La Jara Creek, and channeled it into the Creek. By the 1950s, a dispute had arisen between the predecessors in interest of the current plaintiff-ditch owners, referred to by the W–3894 court as the Reeds and Reynolds, and the owners of the Hansen, Swamp, and Coddington Ditches, predecessors of River Ranch, concerning both diversions by the Swamp and Hansen ditches through substitute headgates on the mainstem of La Jara Creek and the respective priorities of the parties to water discharged into the Creek through the Drain. The dispute eventually came to litigation and culminated in the 1952 decree, *see Reed v. Fluckey*, Civil Action No. 2547 (Colo. Dist. Ct. June 10, 1952), which incorporated an agreement of the parties, generally subordinating the rights of the River Ranch predecessors to divert drain water through the Swamp and Hansen ditches to the rights of the Reeds and Reynolds predecessors, and subordinating the rights of the Reeds and Reynolds ditches to divert non-drain native water[1] to

---

1. Although the Engineers use the term "native water" in juxtaposition with "drain water," re-

the rights of River Ranch's predecessors. Shortly thereafter, in separate litigation concerning the nature of, and priorities to, drain water prior to its actually reaching the Creek, *see Peterson v. Reed,* 149 Colo. 573, 369 P.2d 981 (1962), water from the Drain was held to be tributary to La Jara Creek, and the appropriative rights of the current plaintiff-ditch owners to the native waters of the Creek, some with priority dates as early as the 1890s, were adjudicated and decreed by the district court (the 1960 decree).

¶ 6 By 1977, stream conditions forced a more refined interpretation of the 1952 decree. Although the 1952 decree resolved the earlier dispute by subordinating various rights of each party to rights of the other, including a specification that the defendants—the predecessors of River Ranch—could never question the prior right of the plaintiffs to divert water from the Drain at designated ditches, the decree failed to subordinate any particular ditches of the defendants to specific Reed–Reynolds structures. As a result, in 1977 River Ranch asserted that its Coddington ditch, which was owned along with the Hansen and Swamp ditches by the predecessors of River Ranch but was not specified in the 1952 decree, had not been included in the subordination agreement. Ultimately, the State Engineer filed a claim for declaratory relief (W–3894), seeking guidance concerning the administration of the 1952 decree. After amending its initial complaint, the Engineer took a neutral position, interpleading River Ranch and the various Reed–Reynolds ditch owners, who proceeded to file a number of cross-claims against each other and counterclaims against the Engineer. After forty-one days of testimony, the water court in case no. W–3894 issued its 42–page judgment and decree, which became the subject of the Engineers' assertion of collateral estoppel in the instant proceeding.

¶ 7 In its order granting summary judgment in the instant litigation, the water court determined that the issue raised by the plaintiff-ditch owners had been fully resolved in the prior litigation in a manner that satis-

fied all of the requirements of the doctrine of issue preclusion, or collateral estoppel. The court found that although the precise question—whether the 1952 decree merely *subordinated* the non-drain native water rights of the plaintiff-ditch owners to those of River Ranch or, in fact, *extinguished* those rights altogether—was never expressly determined, it nevertheless found that the scope of the litigation as a whole required the W–3894 court to determine all of the rights of the parties to La Jara Creek water. The water court in this case therefore concluded that by failing to specify any particular right of the plaintiff-ditch owners to non-drain native water, the final judgment in W–3894 necessarily implied that they had none.

¶ 8 The plaintiff-ditch owners appealed that order directly to this court.

## II.

¶ 9 Collateral estoppel, or what we have elsewhere referred to as the doctrine of issue preclusion, is a judicially created, equitable doctrine that bars the relitigation of an issue that has been previously decided in another proceeding. *In re Tonko,* 154 P.3d 397, 405 (Colo.2007); *Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44, 47 (Colo.2001). It is designed to "relieve parties of multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions." *In re Tonko,* 154 P.3d at 405. We have also held, however, that the equitable purposes of the doctrine are furthered only if certain conditions are met. The doctrine therefore applies to bar subsequent litigation *only* if (1) the issue sought to be precluded is identical to an issue actually and necessarily determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Sunny Acres*

serving the former for the non-imported, non-drain waters of the Creek, and the water court below uses the expression "so-called native water," the W–3894 court used the term "native La Jara Creek Water" in reference to all but imported waters flowing in the Creek, including water contributed by the Drain after entering the main-stem of the Creek.

*Villa,* 25 P.3d at 47; *Bebo Const. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 84 (Colo.1999).

¶ 10 As our prior cases demonstrate, the question whether an issue has been *necessarily* determined implicates additional considerations, including whether the issue was actually *litigated* and whether its ultimate determination was in fact necessary to the judgment in that prior action. *Bebo Const. Co.,* 990 P.2d at 85–86. For those questions, as well as the other three prerequisites of the doctrine, to arise at all, however, the identical issue must first have *actually* been determined. *Id.* at 85. If the identical issue has not actually been determined in a prior action, the analysis need proceed no further. *Id.; see also* 18 Alan Wright, Arthur Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4420 (2d ed. 2011) ("Mere prior litigation of an issue without a decision does not justify preclusion when the same issue arises under a different claim or cause of action."). Even if not explicitly determined, an issue is nevertheless considered to have been "actually" determined for purposes of collateral estoppel if its resolution is necessarily implied in an actual determination. *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518–19 (9th Cir.1985), *superseded on other grounds by* 28 U.S.C. § 1961, Pub. L. No. 97–258, § 2(m)(1), 96 Stat. 877, 1062 (1982); *see also* 18 James W. Moore et al., *Moore's Federal Practice* § 132.03[3][e] (3d ed. 2011) ("An issue that was necessarily implicit in a larger determination is given issue preclusive effect."). If, however, the matter explicitly determined could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel will not preclude relitigation of the asserted issue. *Davis & Cox,* 751 F.2d at 1518–19 (citing *Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)); *see also In re Held,* 734 F.2d 628, 629–30 (11th Cir. 1984). *See generally* 18 *Moore's Federal Practice* § 132.03[3][a].

¶ 11 The availability of collateral estoppel has also been characterized as a mixed question of fact and law in which legal issues predominate. *Davis & Cox,* 751 F.2d at 1519. *See generally* 18 *Moore's Federal Practice* § 132.05[10][b]. The question whether or not an issue has been explicitly determined in a prior proceeding will necessarily be a matter of record. Similarly, whether an issue is identical to another or is necessarily implied in the determination of another will invariably involve matters of law and logic, rather than credibility and fact-finding. The narrow question whether a particular issue has actually been determined in a prior action is therefore a matter as to which no deference is owed by reviewing courts to the conclusion of trial courts initially ruling on the affirmative defense of collateral estoppel.

¶ 12 Finally, with regard to the situation presented by the series of decrees involved in the instant ruling, where the prior determination advanced as a bar to relitigation involves the interpretation of still earlier judgments, the final nature of that determination precludes collateral reconsideration of its merits. *See generally* 18 *Moore's Federal Practice* § 132.01[2] ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination—even if erroneous—is conclusive in a subsequent action between the parties, whether on the same or different claim."). For purposes of issue preclusion, it is clearly the *existence* of a final determination of the identical issue, rather than a retroactive assessment of its merits, that is dispositive. *See, e.g., Grieve v. Tamerin,* 269 F.3d 149, 152–54 (2d Cir.2001) (collateral review of the merits of district court's dismissal of plaintiff's claim precluded by doctrine of issue preclusion, even though the reviewing court recognized that dismissal as erroneous). Reconsideration of such earlier judgments themselves may nevertheless be highly probative of the ruling court's understanding of the nature and scope, and therefore of the preclusive effect, of any determination advanced as a bar to the further litigation of an arguably identical issue.

### III.

¶ 13 In addition to their entitlements to various imported water flowing in La Jara

Creek, there was no dispute that both River Ranch and the Reeds and Reynolds held appropriative rights to the native waters of the Creek, with priorities long pre-dating the existence of the San Luis Valley Drain. The 1952 litigation between the two camps was resolved by an agreement, which the W–3894 court characterized and referred to throughout as a subordination agreement, specifying that the predecessors of the Reeds and Reynolds agreed not to challenge the priority of River Ranch ditches to non-drain native water and the predecessors of River Ranch agreed not to challenge the priority of the Reed–Reynolds ditches to drain water. The subordination agreement, however, in no way suggested that the Reeds and Reynolds agreed to subordinate their non-drain water rights to those of all other appropriators on the stream, much less to limit their appropriative rights in La Jara Creek to drain water alone. Quite the contrary, in addition to making little sense for the Reeds and Reynolds to have included such a condition in a bilateral agreement, the decree itself specified, "Nothing in this Decree contained shall be taken or held in any manner to affect the priority of use of water by any party, or the quantify [sic] decreed by any priority, said respective priorities and quantifies [sic] being fully ratified and confirmed by all parties."

¶ 14 The litigation culminating in the 1960 decree involved a dispute between the Reed–Reynolds ditch owners and a third party diverting drain water prior to reaching the Creek, and therefore it did not directly concern the subordination arrangement formalized in the 1952 decree. The 1960 decree was significant for the W–3894 declaratory judgment, however, both because it first included an express determination that water in the Drain was tributary to La Jara Creek, *see Peterson v. Reed*, 149 Colo. 573, 369 P.2d 981 (1962), and because it included an adjudication of the appropriative rights of the Reeds and Reynolds in La Jara Creek. Of significance, the Reed–Reynolds ditches decreed in 1960 included rights with priorities dating from the 19th and early 20th centuries, long before the existence of the Drain, which rights were described in the decree as deriving their supply of water from La Jara Creek, "which supply is augmented by" water from "the Drain Ditch of the San Luis Valley Drainage." While it was important for the 1960 decree to quantify these appropriative rights, to which Bailey, the opposing party in that litigation, would necessarily be junior, nothing in the 1960 decree purported to restrict the appropriative rights of the Reeds and Reynolds in La Jara Creek to water derived from the Drain, nor would such a restriction have been integral to the resolution of that litigation.

¶ 15 Although W–3894 ultimately included a number of cross-claims and counterclaims as well, it was initiated by the State and Division Engineers as a declaratory judgment action, in which they sought resolution of the question whether River Ranch's Coddington ditch should or should not be administered as having been included in the 1952 subordination agreement, and therefore as junior to the Reed–Reynolds ditches with regard to drain water. In addition to scrutinizing the language of the 1952 decree itself, the W–3894 court looked to the actual administration of the Drain, both before and after the 1952 decree; extrinsic evidence of the intent of the parties to the subordination agreement; and both the language and intent of the 1960 decree before concluding that the Coddington ditch was necessarily included in the 1952 subordination agreement as one of the ditches of the River Ranch predecessors. Significantly, however, this conclusion did not cause the W–3894 court to find that the Coddington ditch lacked all right to divert drain water, but merely that its rights to drain water would be subordinate, or junior, to those of the Reed–Reynolds ditches.

¶ 16 There can be little doubt that the W–3894 court understood the 1952 decree as the adoption of a subordination agreement between two distinct groups of ditch owners, each merely subordinating its rights in a certain class of water to the rights of the other. Further, the court expressly found the 1960 decree to be merely supplemental to the 1952 decree, without actually altering its provisions. Having determined that the 1952 decree subordinated River Ranch's Coddington ditch with regard to drain water, along with River Ranch's other ditches, the W–

3894 court simply ordered the Engineers to administer the 1952 decree accordingly.

¶ 17 Central to the conclusion of the water court in this case—that the W–3894 court nevertheless found the plaintiff-ditch owners to be without any entitlement to satisfy their appropriative rights in La Jara Creek from non-drain native water—was the W–3894 court's calculation of historic usage by the Reed ditches and its order limiting their future use to an amount of water not exceeding their historic use. In summarizing its calculations, the W–3894 court attributed all of the Reeds' historic usage for irrigation to either imported water, well water, or drain water. In conjunction with its conclusion that the breadth of the cross-claims in W–3894 required that court "to evaluate all the water on all the lands of all the parties," the water court in this case inferred, from the omission of any specific acknowledgement in the W–3984 declaratory judgment of non-drain native water having been historically used by the Reed ditches, that their appropriative rights in the Creek must have been intentionally limited to water from the Drain.

¶ 18 Our own reading of the record in W–3894 does not support the conclusion that the court in that case was required to, much less that it intended to, determine all of the water rights of the parties. Rather, the cross-claims of the parties, whether they involved the central dispute between the plaintiff-ditch owners and River Ranch or separate disputes among the plaintiff-ditch owners themselves, all concerned relative priorities to water from the Drain or claims for damages resulting from infringement on senior priorities. In any event, apart from the central dispute over the Coddington ditch, which was clearly limited to subordination with regard to drain water, the W3894 court either dismissed or denied each of the cross-claims and counterclaims in that litigation, on grounds not requiring any evaluation of the parties' respective rights to non-drain native water. The judgment included a quantification of the rights of no other party to the litigation; and although the reason for the

W–3894 court's decision to limit the Reed ditches, in a declaratory judgment action, to their historic usage is not entirely clear,[2] it appears to be most naturally explained by the Engineers' obligation to administer the subordination agreement against the backdrop of both River Ranch's junior status with regard to drain water and the Reynolds' challenge to the extent of the Reeds' existing right.

¶ 19 If, as the plaintiff-ditch owners assert, and the language of the 1952 and 1960 decrees appears to support, their appropriative rights with regard to non-drain native water were merely subordinated to those of River Ranch, the W–3894 court's reference to their non-imported supply of water as drain water simply reflects the fact that historically the full amount of their appropriative right had not exceeded the water flowing into La Jara Creek from the Drain. As the water court itself appeared to recognize, in the absence of any indication that the W–3894 judgment was intended as a declaration of *all* rights on the stream, this language of the judgment would simply be understood as a quantification of the appropriative right of the Reeds, any or all of which could be satisfied from the Drain ahead of either River Ranch or any of the other plaintiff-ditch owners. It would suggest nothing, however, about the rights or priorities of the Reeds to non-drain native water, in the event their full appropriation could not be completely satisfied from the Drain.

¶ 20 Because the matter that was explicitly determined by the W–3894 judgment—the amount of water from the Drain for which the Reeds were senior to River Ranch—can be rationally understood without necessarily implying a determination of the asserted issue—whether the plaintiff-ditch owners appropriative rights in La Jara Creek were merely subordinated by the 1952 and 1960 decrees to River Ranch's rights to non-drain native water rather than altogether extinguished—the ditch owners cannot be collaterally estopped from litigating that issue in the current proceedings.

2. The propriety of limiting the Reed ditches to their historic use of native water in a proceeding

of this nature was not questioned on appeal.

## IV.

¶ 21 Because our reading of the record indicates that the plaintiff-ditch owners' entitlement to non-drain native La Jara Creek water was not actually determined in the prior litigation, either expressly or by necessary implication, the summary judgment of the water court is reversed and the case is remanded for further proceedings.