**SHELTER MUTUAL INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Steven D. VAUGHN and Alvin J. Miller, Defendants–Appellants.**

**No. 12CA0654**

Colorado Court of Appeals,
Div. IV.

Announced February 28, 2013

§ 24–51–1105, C.R.S.2012.

1000 ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮

El Paso County District Court, No. 11 CV2475, Honorable G. David Miller, Judge

Donley Law, P.C., Jack E. Donley, Colorado Springs, Colorado, for Plaintiff–Appellee

Robert F. Pribila, P.C., R. Jerome Aquino, Colorado Springs, Colorado, for Defendants–Appellants

Opinion by JUDGE FOX

¶ 1 Shelter Mutual Insurance Company defended Steven D. Vaughn, its insured, in a personal injury case under a reservation of rights because Shelter's interest in avoiding coverage by proving that Vaughn's actions were intentional conflicted with Vaughn's interest in denying all liability. After a jury found Vaughn negligent—the only claim tried—and awarded damages to Alvin J. Miller, plaintiff, Shelter, sought a declaratory judgment that Vaughn's acts were intentional and excluded from coverage under his policy. Defendants, Vaughn and Miller, then unsuccessfully sought to bar declaratory relief under the doctrine of issue preclusion, arguing that the negligence verdict in the underlying trial established that Vaughn's conduct had not been intentional. The court entered judgment for Shelter, and this appeal followed.

¶ 2 We affirm the trial court's decision that issue preclusion does not apply here. We conclude, as an apparent matter of first impression in Colorado, that issue preclusion will not bar an insurer from later denying coverage to its insured when the insurer defended the insured under a reservation of rights and the insurer had an interest in establishing a different set of facts than its insured advanced in the underlying litigation.[1]

### I. Facts and Procedural History

¶ 3 At a YMCA basketball game, Vaughn, the father of a player, hit Miller, a referee, several times and injured him. Initially, Miller sued Vaughn for assault and battery. Shelter hired a lawyer to defend Vaughn under a reservation of rights. Miller amended his complaint to add a negligence claim. Before trial, Miller dropped his assault and battery claim. Vaughn's lawyer did not object. The jury—instructed only on negligence—found Vaughn negligent, and awarded Miller damages.

---

1. Two cases concerning the ability of an insurer to bring a declaratory action denying indemnity after defending its insured in a tort action contain dicta about the preclusive effect of the earlier action, but no Colorado case directly addresses issue preclusion in the context of an insurance company denying coverage after defending its insured under a reservation of rights. *See Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 n. 10 (Colo.1991); *Hartford Ins. Group v. District Court*, 625 P.2d 1013, 1016 (Colo.1981).

¶ 4 Shelter filed a declaratory action asserting that Vaughn's intentional actions caused Miller's injuries, and thus Miller's judgment was not covered by Vaughn's insurance policy. Vaughn assigned all of his rights under his insurance policy to Miller under a *Bashor* agreement,[2] and they proceed jointly as appellants here.

¶ 5 Appellants' trial brief asserted that Shelter was precluded from claiming that Vaughn acted intentionally given the jury's verdict of negligence in the underlying trial. The trial court held that issue preclusion did not apply to Shelter's declaratory action because the issue of whether Vaughn acted intentionally was not necessarily adjudicated at trial and Shelter's interest was not identical to Vaughn's. Thus, Shelter did not have an opportunity to litigate its interest in the underlying trial.

¶ 6 After a bench trial, the court found that Vaughn's actions were intentional and were excluded under the terms of his insurance policy. Appellants do not appeal these findings. Instead, appellants challenge the trial court's decision that issue preclusion does not bar Shelter from asserting that Vaughn's actions were intentional. We agree with the trial court and therefore affirm.

## II. Analysis

### A. Reservation of Rights

■ ¶ 7 An insurance company has a duty to defend its insured so long as the claims for liability allege any facts that fall within the policy. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo.1991); *Hartford Ins. Group v. District Court*, 625 P.2d 1013, 1018 (Colo.1981). This duty is broader than its duty to indemnify. *Hecla Mining Co.*, 811 P.2d at 1089. If an insurer believes that it has no obligation to indemnify—for example, if it believes the insured's actions were intentional and outside policy coverage—it can defend its insured under a reservation of rights. *Id.* A reservation of rights permits the insurer to fulfill its duty to defend, while also allowing it to dis-

pute its duty to indemnify in a later declaratory action, if a court finds the insured liable. *Id.* An insurer can defend a personal injury lawsuit "without risking any adverse collateral consequences to [its] declaratory action from an unfavorable result in the [personal injury action]." *Hartford Ins. Group*, 625 P.2d at 1017.

### B. Issue Preclusion

■ ¶ 8 Issue preclusion, also called collateral estoppel, bars relitigation of issues actually litigated in and necessary to the outcome of a prior action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Vanderpool v. Loftness*, 2012 COA 115, ¶ 10, 300 P.3d 953. Proponents of issue preclusion must prove that

■ (1) the issue sought to be precluded is identical to an issue actually and necessarily determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

■ *Vanderpool*, ¶ 13 (quoting *Reynolds v. Cotten*, 2012 CO 27, ¶ 9, 274 P.3d 540). Issue preclusion is a question of law that we review de novo. *Id.* at ¶ 17.

¶ 9 Shelter does not dispute the third element—there was a final judgment on the merits. We need only find that one element was not met to affirm the trial court's decision that issue preclusion does not apply. *Id.* at ¶ 13. We analyze the second and fourth elements and, for similar reasons, conclude that neither element was met.

#### 1. Privity

■ ¶ 10 Appellants argue that the second element of issue preclusion was met because Shelter was in privity with Vaughn in the underlying trial. While Shelter funded

---

**2.** A *Bashor* agreement generally involves an insured who assigns his claims for coverage to the judgment creditor. *See Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 120 (Colo.2010); *Northland Ins. Co. v. Bashor*, 177 Colo. 463, 466, 494 P.2d 1292, 1294 (1972).

Vaughn's defense, Shelter was not a party to the underlying litigation.

¶ 11 Privity between a party and a nonparty exists when there is a "substantial identity of interests and a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation." *Goldsworthy v. American Family Mut. Ins. Co.*, 209 P.3d 1108, 1115 (Colo.App.2008). "A nonparty is adequately represented for preclusion purposes if the interests of the nonparty and his or her representative are aligned, and the procedure applied by the original court fairly ensured the protection of the interests of the nonparty." *Id.* at 1116.

¶ 12 We agree with the trial court that no privity existed between Shelter and Vaughn in the underlying trial because their interests were not aligned. Vaughn had an interest in denying all liability, whether based on negligence or intentional conduct. Shelter had an interest in proving that if Vaughn was liable, it was for intentional acts because that would release Shelter of the duty to indemnify Vaughn. Shelter's reservation of rights placed Vaughn on notice that the insurer and the insured had divergent interests.

¶ 13 Appellants argue that a "functional relationship" existed between Vaughn and Shelter because Vaughn's lawyer frequently communicated with Shelter's in-house counsel about Vaughn's case. However, Shelter never advocated in court—or to Vaughn's attorney—its interest in proving that Vaughn's liability stemmed from his intentional acts. On the contrary, Shelter's attorney—consistent with the duties Shelter owed to its insured—advised Vaughn's attorney not to oppose Miller's abandonment of the intentional tort claims. *Hecla Mining Co.*, 811 P.2d at 1089–90 (stating that an insurer must defend its insured, even if the insurer believes that the facts may prove that the insurer is not liable for coverage); *Hartford Ins. Group*, 625 P.2d at 1018.

¶ 14 This advice was also consistent with the fact that the attorney Shelter hired for Vaughn owed a duty only to Vaughn. *See* Colo. RPC 1. 8(f) ("A lawyer shall not accept compensation for representing a client from one other than the client unless: ... (2)

there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship...." ); Colo. RPC 5.4(c) ("A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."); Colorado Bar Ass'n, Formal Ethics Opinion 91, *Ethical Duties of Attorney Selected by Insurer to Represent Its Insured* (1993) ("The existence of a coverage question should not be allowed to interfere with the lawyer's duty to exercise independent professional judgment on behalf of the insured.... The attorney retained by the carrier may not defend the insured and at the same time exploit the attorney-client relationship in order to build a case of non-coverage.").

¶ 15 Appellants' reliance on *Reid v. Pyle*, 51 P.3d 1064 (Colo.App.2002), and *Bennett College v. United Bank*, 799 P.2d 364 (Colo. 1990), is misplaced.

¶ 16 In *Reid*, a division of this court found that the plaintiff was in privity with his insurer because he subrogated his rights to his insurer. 51 P.3d at 1069. In *Bennett College*, the Colorado Supreme Court found that a bankruptcy trustee was in privity with the college because the trustee acquired rights to the college's assets after the college's bankruptcy proceeding ended. 799 P.2d at 367.

¶ 17 Here, Vaughn did not subrogate any rights to Shelter, nor did Shelter acquire any of Vaughn's rights during or after the underlying trial. Rather, to ensure that Shelter's rights remained separate from Vaughn's, Shelter defended Vaughn under a reservation of rights.

### 2. Full and Fair Opportunity to Litigate the Issue

¶ 18 Appellants argue that the fourth element of issue preclusion was met because Shelter had a full and fair opportunity to assert its own interests in the underlying trial and litigate the issue of whether Vaughn was negligent. We disagree.

¶ 19 A full and fair opportunity to litigate requires the availability of commen-

surable procedures in the earlier and subsequent proceedings. See *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47, 49 (Colo.2001) (holding that an employer is not precluded from relitigating an employee's disability in a permanent disability proceeding even after litigating the issue in a temporary disability proceeding).

¶ 20 Shelter did not have a full and fair opportunity to assert its own interests in the underlying trial because Shelter's interest conflicted with Vaughn's interest. While Shelter and Vaughn shared an interest in proving that Vaughn was not liable in negligence for Miller's injuries, Shelter also had an interest in proving that if Vaughn was liable, his acts were intentional or criminal, because intentional and criminal acts were excluded from coverage by his insurance policy.

■ ¶ 21 An insurer cannot challenge its duty to indemnify before its insured's liability is established. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 621 (Colo.1999); *Hecla Mining Co.*, 811 P.2d at 1090; *Hartford Ins. Group*, 625 P.2d at 1018. Thus, Shelter could not have asserted that Vaughn's acts were intentional and not covered by his policy *before* Vaughn's liability was determined.

■ ¶ 22 Further, in the underlying trial, Shelter could not have directed Vaughn's attorney to argue that Vaughn acted intentionally because an insurer cannot dispute its duty to indemnify when that duty is in conflict with its duty to defend its insured. *See* Restatement (Second) of Judgments § 58(2) (1982) ("A 'conflict of interest' for purposes of this Section exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the indemnitor's obligation to indemnify and another of which is not."); *see also Williamson v. State Farm Lloyds*, 76 S.W.3d 64, 68 (Tex.App.2002). Similarly, Vaughn's attorney could not have asserted that Vaughn acted intentionally, because that would have been contrary to Vaughn's interests in (1) denying all liability, (2) avoiding potential criminal charges, and (3) reducing the risk of punitive damages. *See, e.g., Hecla Mining Co.*, 811 P.2d at 1089–90; *Hartford Ins. Group*, 625 P.2d at 1018.

¶ 23 While Colorado appellate courts have not directly addressed whether issue preclusion may bar insurers from bringing declaratory actions after liability has been established, other states have done so. *See Royal Ins. Co. v. Process Design Associates, Inc.*, 221 Ill.App.3d 966, 164 Ill.Dec. 290, 582 N.E.2d 1234, 1239 (1991) (citing *Cowan v. Insurance Company of North America*, 22 Ill.App.3d 883, 318 N.E.2d 315 (1974)); *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce*, 762 N.E.2d 1227, 1231 (Ind.2002); *American Family Ins. Group v. Robnik*, 2010 S.D. 69, ¶¶ 14–16, 787 N.W.2d 768, 774; *Williamson*, 76 S.W.3d at 68; *Wear v. Farmers Ins. Co.*, 49 Wash.App. 655, 745 P.2d 526, 529 (1987); *see also Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F.Supp.2d 421, 433 (E.D.Pa.1999) (applying Pennsylvania law). In all of these cases, the insurer was not precluded from disputing its duty to indemnify after liability had been established when the insurer defended the insured under a valid reservation of rights, and there was a conflict between the facts the insurer wanted to establish to preclude coverage and the facts the insured wanted to establish to avoid liability.[3]

---

3. *See Cowan*, 318 N.E.2d at 323 (holding that an insurer can relitigate whether its insured's acts were intentional because issues of coverage are different from the issues in the underlying tort of assault and battery); *State Farm Fire & Cas. Co.*, 762 N.E.2d at 1231 (holding that insurer could relitigate the issue of false imprisonment because the elements of the statute are different from the insurance policy exceptions); *American Family Ins. Group*, 787 N.W.2d at 774 (holding that insurer could relitigate the issue of whether insured's misrepresentations were negligent or intentional when there were no findings that insured was liable for plaintiff's damages); *Williamson*, 76 S.W.3d at 68 (holding that when there is a conflict of interest as to whether the insured's acts were covered by the policy, there is no privity between insured and insurer at trial, and thus the insurer is not collaterally estopped from relitigating the existence of false imprisonment); *Wear*, 745 P.2d at 529 (holding that it would be "grossly unfair" to preclude insurer from relitigating whether its insured's acts were intentional when the underlying trial included both negligence and intentional claims and the insurer was not able to assert its interests in the underlying trial because there was a conflict of interest between the insured and insurer as to the facts each wanted to establish); *cf. Sphere Drake*, 35 F.Supp.2d at 433 (holding

### III. Conclusion

¶ 24 We conclude that issue preclusion will not bar an insurer from later denying coverage to its insured when the insurer defended the insured under a reservation of rights and the insurer had an interest in establishing a different set of facts than the insured in the underlying litigation.

¶ 25 The judgment is affirmed.

JUDGE WEBB and JUDGE LICHTENSTEIN concur.

that insurer was precluded from relitigating whether there was an intervening act that severed the chain of causation and thus negated the insured's liability because that issue was fully litigated and there was no conflict between the insurer's and the insured's interest proving it in the underlying trial).