24CA1461 In the Interest of MFS 05-15-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1461
El Paso County District Court No. 24JV63
Honorable Diana K. May, Judge

---

In the Interest of M.F.S., a Child,

and Concerning Jeremy James Long,

Appellant,

and

Donna Bair, Steven Bair, and Phillip Winchester,

Appellees.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Lipinsky and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

---

Jeremy James Long, Pro Se

No Appearance for Appellees

¶ 1    Jeremy James Long (Long) appeals the district court's judgment that determined it was barred by "res judicata" from reviewing a paternity ruling issued in El Paso District Court Case No. 21JV512 (the 2021 case).  We affirm.

## I.    Background

¶ 2    In 2017, Long started dating P.S.W. (mother).  When Long learned that mother was pregnant, he believed he had fathered M.F.S. (the child).  Soon after the child's birth, however, Long discovered he may not be the child's biological father.  But Long later claimed that he and mother agreed that Long would not undergo paternity testing and would act as the child's father.

¶ 3    Mother was arrested while the child was in her care in August 2021.  The El Paso County Department of Human Services (the Department) obtained custody of the child by court order issued in the 2021 case.[1]  The Department then filed a petition in dependency or neglect against mother.  In November 2021, the Department

---

[1] We take judicial notice of relevant filings in El Paso County Court Case No. 2021JV512.  *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64 (stating that appellate courts "can 'take judicial notice of the contents of court records in a related proceeding'" (quoting *People v. Sa'ra,* 117 P.3d 51, 56 (Colo. App. 2004))).

amended the petition to add Long and other men who might be the child's father. In February 2022, the Department filed paternity results showing there was a zero percent chance that Long was the child's biological father.

¶ 4    The court held a pretrial conference on March 1, 2022 (the March 2022 hearing). Despite Long being present at a prior hearing when the March 2022 hearing was set, he was not present at the March 2022 hearing, though his counsel was. Given Long's paternity results, the court determined that Long was not the child's biological father. In an April 5, 2022 order (the April 2022 order), the court noted that Long's counsel did not object at the March 2022 hearing to Long's dismissal from the case. Thus, upon entry of the court's April 2022 order, Long was no longer a party to the 2021 case.[2] After Long's dismissal from the 2021 case, mother

---

[2] In an October 4, 2023 order in the 2021 case, the court clarified that it had already ruled that Long was not the child's "legal" father. The Colorado Uniform Parentage Act (UPA) defines "parent" as the "natural parent of a child, as may be established pursuant to [the UPA], or a parent by adoption." § 19-1-103(105)(a), C.R.S. 2024. "[T]he UPA contemplates that a 'natural parent' may be a person — irrespective of legal formalities — who falls in the middle of the biology-adoption spectrum and can be 'a nonadoptive parent established pursuant to [the UPA], whether or not biologically related to the child.'" *People in Interest of C.D.P.*, 2023 COA 90,

died in April or May 2022. The court terminated the child's unknown father's parental rights in March 2023, and the child's adoption was finalized in September 2023.

¶ 5 Despite these rulings, in August 2023, Long began to file in the 2021 case numerous requests to be added to that case, as well as admitting his parentage of the child as a psychological father. He also asserted in his various filings that another prospective father of the child had died and that such possible father's next of kin had not been notified about the proceedings, in violation of Colorado law.

¶ 6 The magistrate entered two orders on October 4, 2023 (the October 2023 orders). The October 2023 orders recounted the procedural posture of the case, noting specifically that, at the March 2022 hearing, the court found that Long was not the "legal parent to the child." The magistrate further said, "Mr. Long, a

---

¶ 46 (Johnson, J., specially concurring) (emphasis omitted); *see also* § 19-4-102.5(3), C.R.S. 2024. Even if the Department had not filed a formal claim under the UPA in the 2021 case, because a child may only have two legal parents, *People in Interest of K.L.W.*, 2021 COA 56, ¶¶ 21-25, we read the court's April 2022 order, as clarified by the order from October 2023, to mean that Long was not the child's "parent" as contemplated under the UPA.

previous respondent to this case, was dismissed from the case approximately a year and a half ago. Mr. Long did not file a timely appeal or motion to reconsider the court's ruling." The magistrate concluded, "No legal basis has been provided which would afford Mr. Long the ability to now intervene in these proceedings." The October 2023 orders provided Long with notice that the orders were issued by a magistrate, and that he had seven days after receiving the orders to file a petition for district court review. The magistrate denied another request by Long to intervene in the case on October 5, 2023.

¶ 7 On November 6, 2023, Long filed an appeal in this court, Case No. 2023CA1874 (the 2023 appeal), while also continuing to file various requests in the 2021 case. On November 16, 2023, this court issued an order to show cause (show cause order) asking why the 2023 appeal should not be dismissed for lack of jurisdiction because Long failed to file a petition for district court review in the 2021 case, as required by section 19-1-108(5.5), C.R.S. 2024, and C.R.M. 7(a)(11), (12).

¶ 8 After issuance of the show cause order, on December 4, 2023, Long filed two petitions for district court review in the 2021 case.

The district court noted that the April 2022 order — declaring that Long was not the child's legal father and dismissing him from the 2021 case — was issued by a district court judge and, thus, the magistrate rules did not apply to such review. And the district court highlighted that Long had a pending appeal in this court, and that it "decline[d] to address the merits of the Petition; leaving the petition to be determined by the Court of Appeals."

¶ 9     This court dismissed the 2023 appeal on December 15, 2023.

¶ 10     In January 2024, Long initiated the action (the 2024 case) giving rise to this appeal. In the 2024 case, he filed a petition to determine parentage, raising many of the same issues he raised in the 2021 case. The magistrate found that it lacked authority to reconsider the court's paternity ruling from the 2021 case. Long then filed a petition for district court review in the 2024 case, and the district court affirmed the magistrate's judgment, reasoning that "res judicata" barred Long's claim for a determination of parentage. Long filed this appeal.

## II.    Analysis

### A. The Term "Res Judicata" Is No Longer Used

¶ 11    Given our supreme court's decision in *Foster v. Plock*, 2017 CO 39, ¶¶ 14-15, we must first determine whether the 2024 case used the term "res judicata" to mean that Long's claim was barred by either claim preclusion or issue preclusion.

¶ 12    *Foster* explained that the term "res judicata" should be abandoned for the more precise terms of "claim preclusion" and "issue preclusion." *Id.*; *see also Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005) (noting the phrase "res judicata" was commonly used as an overarching label for both claim and issue preclusion). "In the broadest sense, claim preclusion prevents the perpetual re-litigation of the same claim or cause of action." *Foster*, ¶ 12; *see also Brown v. Felsen*, 442 U.S. 127, 131 (1979) (claim preclusion "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding"); *Argus Real Est., Inc.*, 109 P.3d at 608 (claim preclusion prevents re-litigation of matters that have already been decided, or that could have been raised, in a prior proceeding if

there is (1) finality of the first judgment; (2) identity of subject matter; (3) identity of claims for relief; and (4) identity or privity between parties to the actions). "The goal of the doctrine is to promote judicial economy by barring a claim litigated in a prior proceeding from being litigated again in a second proceeding." *Foster*, ¶ 12.

¶ 13    Like claim preclusion, issue preclusion "is designed to 'relieve parties of multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions.'" *Vanderpool v. Loftness*, 2012 COA 115, ¶ 11 (quoting *Reynolds v. Cotten*, 2012 CO 27, ¶ 9). The doctrine prevents "the re-litigation of discrete issues, rather than causes of action." *Foster*, ¶ 13. Therefore, "once a particular issue is finally determined in one proceeding, parties to th[at] proceeding are barred from re-litigating that particular issue again in a second proceeding, even when the actual claims for relief in the two proceedings are different." *Id.* Issue preclusion is broader than claim preclusion in the sense that it may apply to different claims that are asserted in the two proceedings, but narrower in the sense that it only applies when the issue was actually litigated. *Id.*

7

¶ 14　Issue preclusion may be invoked offensively or defensively. It is used defensively when a defendant seeks to apply it to bar a plaintiff from attempting to prove an issue that the plaintiff previously litigated and lost against the defendant or another party. *Vanderpool*, ¶ 11. It is invoked offensively when a plaintiff seeks to apply the doctrine to bar a defendant from relitigating an issue that the plaintiff must prove and that the defendant previously litigated unsuccessfully against the plaintiff or another party. *Id.*

¶ 15　Issue preclusion prohibits litigation of the issue in the second proceeding if four elements are met: (1) the prior proceeding was decided on a final judgment on the merits; (2) the issue in the current proceeding is identical to the issue actually adjudicated in a prior proceeding; (3) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the party against whom issue preclusion is asserted is a party or in privity with a party in the prior proceeding. *Id.*

¶ 16　Here, we determine that Long's challenge to the paternity ruling falls under the doctrine of issue, rather than claim, preclusion. The 2021 case dealt primarily with whether to

terminate the parent-child legal relationships, which was the Department's cause of action. And at one point, Long was a named respondent as a possible parent of the child. To determine the legal parents of the child for termination of legal relationships (if there are multiple people who could be the child's father), the district court had to decide the issue of paternity in the 2021 case.[3]

## B. Standard of Review

¶ 17　　Whether issue preclusion bars subsequent review of a claim in a different proceeding is a question of law that we review de novo. *Vanderpool*, ¶ 17.

## C. Issue Preclusion Bars Long's Claim

¶ 18　　Long contends that the doctrine of "res judicata" does not apply because the district court in the 2021 case lacked jurisdiction to issue the paternity ruling. He asserts that the court in the 2021 case failed to follow the procedures of the UPA because it did not

---

[3] We acknowledge that a person may bring a claim under the UPA as an independent cause of action or as part of a dependency and neglect proceeding or domestic relations case. *See* § 19-4-109(1), C.R.S. 2024. We need not decide, however, whether an independent action would be barred by issue preclusion or claim preclusion because it is undisputed that the child's paternity in the 2021 case was decided as part of the dependency and neglect proceeding.

notify all possible fathers (or the next of kin for the deceased possible father) about the proceeding. *See* § 19-4-110, C.R.S. 2024 (the UPA requires the court to make a deceased prospective father's next of kin a party to the paternity proceedings).

¶ 19 Colorado courts have held that if a court fails to comply with the procedures for the UPA, it lacks jurisdiction to determine who is a child's legal parent. *See, e.g., People in Interest of M.R.M.*, 2021 COA 22, ¶ 28; *In re Marriage of Burkey*, 689 P.2d 726, 728 (Colo. App. 1984). Long is essentially relying on the axiom that, because a court's subject matter jurisdiction cannot be waived, a party may challenge it at any time. *Town of Carbondale v. GSS Props., LLC*, 169 P.3d 675, 681 (Colo. 2007). In other words, if the district court in the 2021 case lacked jurisdiction to determine paternity, then the court in the 2024 case erred by not allowing Long to challenge the court's ruling from the 2021 case.

¶ 20 But Long's argument fails because he had a chance to raise subject matter jurisdiction in the 2021 case and failed to do so. "A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment." *Ins. Corp. of Ir., Ltd. v.*

*Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982). "[I]t has long been the rule that principles of res judicata apply to jurisdictional determinations — both subject matter and personal." *In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d 660, 670 (Colo. 2006) (quoting *Ins. Corp. of Ir.*, 456 U.S. at 702 n.9).

¶ 21    In the October 2023 order denying Long's request to intervene in the 2021 case, the court found that Long never objected to his dismissal from the case after the March 2022 hearing or the April 2022 order, nor did he seek reconsideration of the court's determination that he was not the child's legal father.  Therefore, Long cannot in the 2024 case collaterally attack the court's subject matter jurisdiction in the 2021 case.  *See In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d at 670.

¶ 22    As a result, we agree with the court's ruling in the 2024 case that res judicata — specifically issue preclusion — bars Long from relitigating the child's paternity.  The four elements of issue preclusion are satisfied.

¶ 23    First, Long does not dispute that the ruling from the March 2022 hearing that was reduced to writing in the April 2022 order in the 2021 case resulted in a final judgment with respect to whether

11

he was a parent of the child. To the extent his jurisdictional argument seeks to undermine the finality of the April 2022 order, we have already concluded he cannot raise lack of subject matter jurisdiction to collaterally attack the validity of the paternity ruling.

¶ 24 And the second and third elements of issue preclusion are satisfied. The 2024 case concerns Long's attempt to relitigate the paternity ruling from the 2021 case, which was an issue actually adjudicated. The court determined that Long was not the child's biological (legal) father. He argued in his untimely petitions for review in the 2021 case that the court lacked subject matter jurisdiction; specifically he asserted that the court erred by solely relying on genetic testing to determine paternity and failing to notify one possible father (or that man's next of kin because the man had died) of the paternity proceedings.

¶ 25 We determine it is not accurate that the court in the 2021 case did not attempt to notify unknown potential fathers. The Department requested, and the court granted, service by publication of the summons for the petition in dependency or neglect on the unknown father in the Colorado Springs area because the mother had never provided information about the

12

whereabouts of the unknown father. Therefore, the court in the 2021 case attempted to notify all individuals who might be the child's possible father.

¶ 26 Even so, Long raises two points that we construe to be arguments that he lacked the opportunity to fully and fairly litigate the paternity issue in the 2021 case. First, he points to section 19-4-105(1)(d), C.R.S. 2024, of the UPA, which states that a "person is presumed to be the natural parent of a child if: . . . [w]hile the child is under the age of majority, the person receives the child into the person's home and openly holds out the child as the person's natural child." Long alleges he satisfied this presumption because he developed a "father daughter relationship with [the child]" and argues that the district court in the 2021 case erred by solely relying on genetic testing to determine the child's paternity.

¶ 27 But Long did not raise this issue until November 2023, when he belatedly filed a petition for review in the 2021 case. As the magistrate previously determined in the October 2023 orders, Long had a year and a half to file a motion to reconsider the April 2022 order, but he did not do so. More importantly, though, because a district court judge — not a magistrate — issued the April 2022

13

order, ostensibly the magistrate did not have the authority in October 2023 to overrule the district court judge's prior paternity determination. *See* C.R.M. 5(a) ("Except for correction of clerical errors pursuant to C.R.C.P. 60(a), a magistrate has no authority to consider a petition for rehearing."); *In re Marriage of James*, 2023 COA 51, ¶ 13 ("A magistrate who is without authority as to a particular action lacks the jurisdiction to act . . . .").

¶ 28     Second, Long states in his appellate briefing that during the November 2021 hearing, he was unable to ask his counsel to object to the court's paternity ruling and dismissal order because he was unsure what to do in those circumstances. He also states that he was emotionally distraught. We note that, based on the court record in the 2021 case, Long was not present at the March 2022 hearing. Nonetheless, his arguments on appeal suggest that, despite his absence, he had notice of the court's rulings. Because he does not argue he lacked notice of the court's rulings from the March 2022 hearing or the April 2022 order, we remain unpersuaded that Long did not have a full and fair opportunity to litigate his paternity claim.

¶ 29    Finally, as to the fourth element, it is undisputed that the party against whom issue preclusion is asserted — i.e., Long — was a party in the prior proceeding.  Nonetheless, Long contends that "res judicata" does not apply because the deceased prospective father (or his next of kin) was not a party to the 2021 case.  But for issue preclusion to apply, we must analyze whether Long was a party to the 2021 and 2024 cases, not determine whether all the parties in the two proceedings were the same.  *In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d at 667 ("The doctrine of issue preclusion provides that a court's final decision on an issue actually litigated and decided in a previous suit is conclusive of that issue in a subsequent suit between the same parties or their privies . . . ."); *see also DKN Holdings LLC v. Faerber*, 352 P.3d 378, 387 (Cal. Ct. App. 2015) ("[U]nlike claim preclusion, issue preclusion can be raised by one who was not a party or privy in the first suit.").

¶ 30    Thus, the district court did not err when it determined that Long's challenge to the paternity ruling from the 2021 case could not be relitigated in the 2024 case because the claim was barred by issue preclusion.

### III. Conclusion

¶ 31    We affirm the district court's judgment denying Long's petition of review.

JUDGE LIPINSKY and JUDGE MOULTRIE concur.