24CA2138 Glacier v BK 09-04-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2138
Mesa County District Court No. 23CV30178
Honorable Jeremy L. Chaffin, Judge

Glacier Bank, a Montana Banking Corporation d/b/a Bank of the San Juans, a Division of Glacier Bank,

Plaintiff-Appellee,

v.

BK Limited and Bruce A. Johnson,

Defendants-Appellants.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE JOHNSON
Welling and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 4, 2025

---

Goldman, Nicholson & Mack, P.C., Josh W. Mack, Durango, Colorado, for Plaintiff-Appellee

Drew Moore, Grand Junction, Colorado, for Defendants-Appellants

¶ 1     Defendant, BK Limited (the Company), appeals the district court order awarding attorney fees and costs to plaintiff, Glacier Bank, d/b/a Bank of the San Juans (the Bank).[1]  We affirm.

## I.     Background

¶ 2     In September 2020, Bruce A. Johnson (Johnson) opened a business checking account with the Bank for the Company.  The checking account agreement provided that each account holder was liable for any account shortages resulting from charges or overdrafts, regardless of fault, and that, in the event of a dispute, the Bank was entitled to reasonable attorney fees as permitted by law.  The checking account agreement also required that any disputes involving the contract be submitted to arbitration.

¶ 3     In February 2023, Johnson deposited a check for $249,850 into the account.  Johnson then wire transferred most of that amount into an account at Wells Fargo.  The Bank later discovered that Johnson's check was a fraudulent instrument, and Wells Fargo

---

[1] Bruce A. Johnson was the sole member and owner of the Company and named in the Bank's complaint as a defendant.  The Bank asserted an alter ego claim against Johnson to hold him personally liable for the Company's debt.  Although Johnson is named as an appellant on appeal, we see no district court judgment or order subjecting him to individual liability.

1

returned a portion of the wire-transferred funds to the Bank. All told, Johnson's checking account had an overdrawn balance of $169,477.34.

¶ 4 In March 2023, the Bank sent the Company a demand letter to pay the overdraft balance. By May 2023, the Company had not paid any of the outstanding balance, so the Bank filed a breach of contract claim against the Company and sought to pierce the corporate veil to hold Johnson personally liable.

¶ 5 Around the same time, the Bank learned that the Company was attempting to sell its only asset, real property that it owned in Fruita, Colorado. The Bank learned of the Company's plans when Johnson asked the Bank for pay-off statements involving two promissory notes encumbering the property that the Bank had financed, the first for $120,000 and the second for $40,000. Because the sale of the Company's only asset would make it more difficult for the Bank to recover its claimed damages, the Bank sought in the district court a writ of attachment to prevent the sale of the Company's property.

¶ 6 Following a hearing, the district court found that (1) under the account agreement's terms and conditions, the Company was

required to pay its debt to the Bank; (2) the contract for the sale of the Company's property was executed with the intent to hinder the Bank from collecting the existing debt the Company owed to the Bank; and (3) the Company had not produced competent proof that it would incur damages from a continuation of the writ of attachment.

¶ 7 The property was sold for $389,000 in August 2023, and the net proceeds of the sale were deposited in the court's registry.

¶ 8 The district court action was stayed pending arbitration of the Bank's breach of contract claim. The Bank sought district court confirmation of the $195,611.84 amount it was awarded in arbitration, which included:

- $167,477.34 for the total of the Company's overdraft balance;
- $17,124.18 for pre- and post-judgment interest; and
- $9,010.32 for attorney fees and costs attributable to the arbitration.

The Bank also sought an award of attorney fees and costs it had incurred when it sought the writ of attachment to prevent the sale of the Company's property before arbitration. The Company did not file a response to the Bank's request. The court confirmed the

3

arbitration award and found the Bank was entitled to an award of the fees and costs that it had not already been awarded as part of the arbitration award. The court ordered the Bank to file a motion for fees and costs.

¶ 9 Following the court's order, the Bank filed a motion seeking an award of $18,272.50 in attorney fees and $1,961.96 in costs related to the writ of attachment. The Company objected to the additional attorney fees and costs, arguing that the court should deny the Bank's request because the issue of attorney fees had been resolved by the arbitrator and was barred by the doctrine of claim or issue preclusion.

¶ 10 The district court granted the Bank's motion and awarded the amount requested. In its order, the court highlighted that (1) the arbitrator did not and was not required to determine the issue of attorney fees in the action preceding arbitration; (2) the Company did not challenge the amount of the Bank's fees or costs based on reasonableness or based on any grounds other than issue preclusion; and (3) the Company's objection was filed after the court had already granted the Bank's motion for an award of additional

fees and costs and without any good cause justification or showing of excusable neglect for having failed to timely object.

¶ 11    The Company now appeals.

## II.    Standard of Review

¶ 12    We review a district court's decision to award attorney fees for an abuse of discretion. *Nesbitt v. Scott*, 2019 COA 154, ¶ 16. A court abuses its discretion if the award is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication of the law. *Adams Cnty. Hous. Auth. v. Panzlau*, 2022 COA 148, ¶ 17.

¶ 13    Whether issue preclusion bars subsequent review of a claim or issue in a different proceeding is a question of law that we review de novo. *Vanderpool v. Loftness*, 2012 COA 115, ¶ 17.

## III.    Preservation

¶ 14    The Bank contends that the Company did not preserve its objection to the district court's decision to award the Bank its attorney fees and costs because the Company did not object until after the court had already determined that the Bank was entitled to such an award.

¶ 15    We acknowledge that the Company did not file a response objecting to the Bank's request for attorney fees and costs, which

the Bank asked for in its motion to confirm the arbitration award. But if a party raises an argument to such a degree that the court has the opportunity to rule on it, the argument is considered preserved for appeal. *Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21. Here, the Company argued in its belated objection that the fees preceding arbitration were barred by res judicata because the arbitrator awarded fees as part of that award. In granting the additional attorney fees requested by the Bank, the district court addressed and rejected the Company's issue preclusion argument. Therefore, we deem the Company's objection preserved for appellate review.[2]

## IV. Analysis

¶ 16    The Company contends that the district court erred in awarding the Bank the additional attorney fees and costs because the award was barred by res judicata. We disagree.

---

[2] The Bank also contends we should not review the Company's argument because the Company failed to cite the precise location in the record where the issue was raised and ruled on by the court in accordance with C.A.R. 28(a)(7)(A). The record on appeal was not voluminous and, therefore, we were able to locate the necessary portions of the record. We remind counsel, however, to comply with the appellate briefing rules in the future.

¶ 17    We will not use the term "res judicata," as the supreme court in *Foster v. Plock*, 2017 CO 39, ¶¶ 14-15, abandoned it for the more precise terms of "claim preclusion" and "issue preclusion."  *Id.*; *see also Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005) (noting the phrase "res judicata" was commonly used as an overarching label for both claim and issue preclusion).

¶ 18    Claim preclusion and issue preclusion are "designed to 'relieve parties of multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions.'"  *Vanderpool*, ¶ 11 (quoting *Reynolds v. Cotten*, 2012 CO 27, ¶ 9).  Here, the district court applied the doctrine of issue preclusion, which prohibits litigation of an issue in a second proceeding if four elements are met: (1) the issue is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full

and fair opportunity to litigate the issues in the prior proceeding. *Stanton v. Schultz*, 222 P.3d 303, 307 (Colo. 2010).

¶ 19    The district court focused on the first factor and determined that the award of additional fees and costs had not been "actually litigated and necessarily adjudicated in the prior proceeding." The court reasoned that the arbitrator "felt his consideration was limited to only attorney fees attributable to the arbitration and that any request related to fees for this action would be best left to be determined by" the district court. As a result, the district court was not "persuaded that issue preclusion prohibits award of the requested attorney fees."

¶ 20    We agree with the court's conclusion because the attorney fees and costs sought by the Bank were not identical to those awarded as part of the arbitration award. The final arbitration award noted that the "Bank initially chose to file litigation in state court, rather than initiating arbitration, per the Agreement." As a result, the arbitrator said that "any costs and fees related to the prior litigation will not be awarded herein." The final award further stated that "the amounts awarded [as part of the arbitration award] for costs and fees will be only for costs and fees associated with this

arbitration incurred by Bank after the date of the filing of this arbitration on November 3, 2023."

¶ 21 With a few exceptions, the bill of costs submitted by the Bank as part of its motion for attorney fees included dates for attorney work performed or costs incurred either before November 2, 2023 or after entry of the final arbitration award on August 15, 2024. A few exceptions included attorney work to file a motion with the court for a continued stay during arbitration in February 2024, correspondence with opposing counsel related to a filed status report with the court in June 2024, and court filing fees in June 2024.

¶ 22 We see nothing in the bill of costs seeking recovery for attorney work or costs related to litigating the arbitration matter. Instead, the attorney fees and costs dealt with work related to the Bank initiating the district court matter to protect its interest in the Company assets to satisfy any judgment the Bank obtained against the Company, confirmation of the arbitration award, and briefing on this request for attorney fees and costs. The Company has not challenged the attorney fee award based on the reasonableness of the amount charged, nor has it objected to any specific item on the

bill of costs.  And the Company has not identified, nor can we discern, any attorney fees or costs that the Bank sought and obtained from the district court that were identical to those awarded as part of the arbitration award.  Consequently, we conclude the district court did not abuse its discretion by awarding the Bank $18,272.50 in attorney fees and $1,961.96 in costs for litigation preceding and following the arbitration.

## V.    Conclusion

We affirm the district court's order.

JUDGE WELLING and JUDGE GROVE concur.