[No. 9968-3-II. Division Two. November 17, 1987.]

WILLIAM E. WEAR, ET AL, *Appellants,* v. FARMERS INSUR-ANCE COMPANY OF WASHINGTON, *Respondent.*

656

*Robert W. Shannon, John D. Nellor,* and *Morse & Bratt,* for appellants.

*Gregory T. Bartholomew* and *Mitchell, Lang & Smith,* for respondent.

ALEXANDER, J.—William and Ann Wear appeal the trial court's determination in a declaratory judgment action that Farmers Insurance Company had no obligation to pay a judgment against the Wears because Farmers properly had canceled the Wears' homeowner's insurance policy prior to the incident that led to Wear's liability. Farmers cross–appeals the trial court's determination that William Wear's act was negligent and thus, not intentional. We agree with Farmers that the trial court erred in concluding that Wear's act was not intentional; therefore, we affirm the trial court's judgment in favor of Farmers and do not reach the policy cancellation issue.

On September 24, 1982, William Wear struck Robert Blunck, causing personal injuries to Blunck. Before trial, Wear was charged with the crime of simple assault and he pleaded guilty to the charge. Blunck then brought a civil suit against the Wears to recover for the injuries he allegedly sustained. Blunck sought recovery on theories of negligence and assault. The Wears tendered defense of the lawsuit to their homeowner's insurance carrier, Farmers Insurance Company, which undertook to defend Wear under a reservation of rights.

After all testimony was heard at the trial on civil liability, the trial court instructed the jury that, in order for

Blunck to recover against the Wears on a negligence theory, he must prove that Wear was negligent and that Wear's negligence was the proximate cause of Blunck's injuries. The trial court also instructed the jury that, in order to prove his claim for assault, Blunck must prove that Wear assaulted Blunck and that this assault was a proximate cause of Blunck's injuries. The trial court defined assault as "an intentional striking of the person or body of another."

In answer to special interrogatories submitted by the trial judge, the jury found that Wear was negligent *and* that Wear assaulted Blunck. The jury also concluded that Wear's negligent and intentional acts caused Blunck's injuries. The jury entered a verdict of $45,000 in favor of Blunck.

The Wears then commenced this declaratory judgment action, seeking to establish that Farmers was obligated to pay the judgment. Farmers answered, claiming that no coverage existed for the incident because (1) the Wears' homeowner's policy was canceled prior to the date of the assault for Wear's failure to pay premiums, and (2) the policy did not provide coverage because Blunck's injuries were caused by William Wear's intentional act. The Wears do not dispute the fact that if William Wear's acts were intentional, no coverage exists because Wear's insurance policy with Farmers excludes coverage for intentional acts.[1]

At the conclusion of the declaratory judgment hearing, the trial court held that Wear's policy was properly canceled by Farmers before the incident in question and, consequently, that there was no coverage for Wear's acts, be they negligent or intentional. However, the trial court went on to conclude, in the alternative, that because the jury's answer to interrogatories in the liability trial indicated that William Wear was negligent and that he assaulted Blunck,

---

[1]The policy provides:

"This insurance does not apply . . .:

". . . to bodily injury . . . caused willfully, intentionally or maliciously by . . . the insured. . . ."

the interrogatories should be construed against Farmers, and in favor of coverage for the incident. The trial court thus concluded, as a matter of law, that the jury's findings amounted to a finding of negligence.

Farmers contends that notwithstanding the trial court's ruling that no coverage existed because the policy was properly canceled by Farmers, the trial court erred in construing the interrogatories against Farmers. We agree.

In concluding that Wear's acts were not excluded by the intentional act provision of the policy, the trial court reasoned that the jury interrogatories were inconsistent and that, like provisions of an insurance policy, they should be construed against the insurer. No authority exists for such a conclusion. Construing ambiguities against insurance companies is a rule of insurance contract construction, not a rule of verdict construction. *See, e.g., First Nat'l Ins. Co. of Am. v. Perala,* 32 Wn. App. 527, 531, 648 P.2d 472, *review denied,* 98 Wn.2d 1002 (1982).

In any event, we believe that the trial court mistakenly relied on the jury's findings to any extent in making its determination that William Wear acted negligently in striking Blunck. No Washington court has reached the issue of whether an insurance company, which has defended under reservation of rights, is bound by findings in the liability action in a later declaratory judgment action to determine whether the insurance company must pay a judgment entered in the liability action. However, we are inclined to follow what appears to be the majority rule: that when a conflict of interest exists between the insured and the insurance company in an underlying liability action and the insurance company defends the insured in the liability action under a reservation of rights, the insurance company is not bound by prior findings in a later declaratory judgment action on coverage issues. *See Spears v. State Farm Fire & Cas. Ins.,* 291 Ark. 465, 725 S.W.2d 835 (1987); *State Farm Mut. Auto. Ins. Co. v. Glasgow,* 478 N.E.2d 918 (Ind. Ct. App. 1985). *See also* Restatement (Second) of Judgments §§ 57–58 (1982).

Our discussion of the reasoning behind the holdings in the above cases, and consistent opinions in other jurisdictions, requires us to confront principles of collateral estoppel which, conceivably, are implicated.

A party is collaterally estopped from relitigating issues decided in a previous suit if four requirements are met:

> (1) the issue decided in the prior adjudication is identical with the issue now before the court, (2) there was a final judgment on the merits, (3) the party against whom the plea is now asserted is a party or is in privity with a party to the prior adjudication, and (4) the application of the collateral estoppel doctrine will not work an injustice against the party against whom the doctrine is applied.

*San Telmo Assocs. v. Seattle,* 108 Wn.2d 20, 22–23, 735 P.2d 673 (1987). All four requirements center on whether the party that is being estopped has had a "full and fair opportunity" to present its case. *See, e.g., Fahlen v. Mounsey,* 46 Wn. App. 45, 50, 728 P.2d 1097 (1986).

A fifth requirement of collateral estoppel is that the finding sought to be made binding involve "ultimate facts": those "necessary and essential" to the judgment in the first action. *See McDaniels v. Carlson,* 108 Wn.2d 299, 305–06, 738 P.2d 254 (1987).

Collateral estoppel can bind an insurer to factual determinations made in a prior liability action against the insured in a subsequent declaratory judgment action to determine coverage issues. The court in *Finney v. Farmers Ins. Co.,* 21 Wn. App. 601, 586 P.2d 519 (1978), *aff'd,* 92 Wn.2d 748, 600 P.2d 1272 (1979) stated the general rule that when an insurer has notice of an action and an opportunity to participate, it is bound by any judgment against its insured on liability questions, and barred by any material finding of fact that is essential to the liability judgment and also is decisive of coverage under an insurance policy. *Finney,* 21 Wn. App. at 617.

Application of the aforementioned principles of collateral estoppel against a liability insurer is justifiable, however, only when the insurer's interests are in harmony

with the insured's interests. When the insurer has the same interest as the insured in disputing liability and damage issues, it is fair to treat the insurer as a party for collateral estoppel purposes.

This rationale should not apply, however, when the insurer's and the insured's interests diverge on coverage issues. When an insurance company disputes coverage but agrees to defend the insured under a reservation of rights, a direct conflict of interest may arise if the facts at issue in the liability trial conceivably are germaine to coverage issues. In such a case, the insurance company is placed in an untenable position if it would find itself barred from asserting its position on coverage issues in a later declaratory judgment action because of determinations in the liability action.

In that case, the insurer would have an interest in establishing one set of facts and the insured would have an interest in establishing another set of facts. However, the insurance company would be prevented from asserting a position in the liability action that is contrary to the insured's interest because it owes a fiduciary duty to the insured even when it is defending under a reservation of rights. *Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381, 387, 715 P.2d 1133 (1986). To bind the insurance company, in spite of the apparent conflict, would be grossly unfair.

Such a situation exists here. In the underlying trial, Wear had an interest in establishing that he did not injure Blunck either negligently or intentionally. Farmers was obligated to defend that position on Wear's behalf. However, insofar as its duty to pay is concerned, Farmers has a strong interest in asserting its position that Wear intentionally injured Blunck, rather than through negligence. Because Farmers recognized this apparent conflict of interest before the liability trial took place and gave the Wears prompt notice of the conflict by its reservation of rights, it should not be collaterally estopped from litigating the issue of Wear's intent in the declaratory judgment action.

Therefore, the jury's interrogatories and the verdict in the liability trial are irrelevant to the determination of Wear's intent and the existence of coverage under the Wears' policy. How, then, is the issue of the insured's intent to be determined? It can only be determined at a hearing at which the trial court takes evidence on the coverage issue. Here, instead of taking testimony at the declaratory judgment action on the issue of intentional action, the parties elected to submit the record from the liability trial to the trial court. However, the trial court apparently chose to look only at the jury interrogatories, and went on to construe them against Farmers. Instead, it should have reviewed the record submitted to it to determine whether Wear's acts were intentional or negligent, or both. The trial court did not do so, and that was error.

Because the evidence in this case is so clear, we are not inclined to remand to the trial court for such a determination. Instead, we have reviewed the record of the liability trial ourselves in order to determine the coverage issue.

The testimony at that trial, as revealed by the record, shows that Wear, at the very least, intentionally "shoved" Blunck. Wear admits that fact. Mrs. Blunck also testified that "Mr. Wear hit [Blunck] with his fist." Mr. Blunck testified that he was "knocked out" by William Wear without any provocation. This evidence, therefore, is sufficient to support the jury's finding of assault.[2] Notwithstanding the jury's finding of negligence, our review of the record convinces us that the evidence does not support a finding of negligence. There is simply no evidence that Blunck's injuries arose as a result of negligent acts by

---

[2]Farmers also argues that Wear is collaterally estopped from asserting negligence because he pleaded guilty to the criminal charge of simple assault. However, collateral estoppel is applied only when defendants in civil cases have been convicted of criminal charges. *Safeco Ins. Co. of Am. v. McGrath,* 42 Wn. App. 58, 62, 708 P.2d 657 (1985), *review denied,* 105 Wn.2d 1004 (1986). Entry of a guilty plea in a criminal case does not serve to collaterally estop a defendant from litigating the issue in a civil trial. *McGrath,* 42 Wn. App. at 62–63.

Wear.[3]

Because we conclude that no coverage exists for Wear's acts that caused the incident, we do not reach the Wears' contention that their policy had not been canceled.

We affirm.

REED, C.J., and WORSWICK, J., concur.

---

[3]The incident in question arose when Blunck fired Wear's son as a student assistant high school football coach. Wear called Blunck and heatedly objected to the firing and stated that he was coming over to confront Blunck. Wear met Blunck in Blunck's driveway and after yelling and swearing at Blunck, Wear knocked Blunck to the ground.