[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE EAGLE AMERICAN INSURANCE COMPANY'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF SUBMITTING SPECIAL INTERROGATORIES (No. 110)
The motion to intervene now before the court has been filed by the defendant's insurer, Eagle American Insurance Company ("Eagle"). Eagle wishes to submit special interrogatories to the jury to determine whether its homeowner's insurance policy ("policy") with the defendant covers the defendant's alleged conduct in this case. The defendant objects to the proposed intervention, and the plaintiff takes no position on the matter. It is common ground that Eagle seeks permissive intervention rather than intervention as of right and that the court's decision is, consequently, discretionary in nature. For reasons briefly explained below, the proposed intervention would be inappropriate here.
The plaintiff, William Hunter, commenced this action by service of process on March 11, 1999. Troy Peters is the sole defendant. Hunter's complaint consists of three counts. Count I alleges negligence, Count II alleges assault and battery, and Count III alleges recklessness. All three counts arise from a common factual allegation. Paragraph 2 of the complaint alleges that, "On or about the date of December 18, 1998, while the Plaintiff was lawfully in the premises of Christopher's Cafe, in the Town of Groton, the Defendant, without any provocation, approached the CT Page 16663 Plaintiff, swung his arm, fist and/or hand, and struck the Plaintiff with his arm, fist and/or hand in the left eye." The case is presently awaiting trial.
On November 1, 2001, Eagle filed the motion to intervene now before the court. Eagle is Peters' insurer. The motion seeks intervener status "for the limited purpose of submitting special interrogatories to the jury." The motion was heard on December 3, 2001.
As mentioned, it is common ground that Eagle's motion is a motion for permissive intervention rather than intervention as a matter of right. SeeWashington Trust Co. v. Smith, 241 Conn. 734, 739-40, 699 A.2d 73
(1997). The trial court, consequently, has "broad discretion" in the matter. Id. at 740.
Courts have differed on the propriety of allowing intervention by insurers for the purpose of submitting special interrogatories. Compare,e.g., Knowling v. Hunt, 41 Conn. Sup. 389, 577 A.2d 1144 (1990) (allowing intervention), with Restor-A-Dent Dental Laboratories, Inc. v. CertifiedAlloy Products, Inc., 725 F.2d 871 (2d Cir. 1984) (finding intervention inappropriate). Broadly speaking, intervention in this setting can be justified, at times, by the interests of judicial economy. Factual questions left unanswered in the pending action may have to be answered in a second action. See Knowling v. Hunt, supra, 41 Conn. Sup. at 391. At the same time, intervention poses some hazards. A disparity between the special interrogatories and the causes of action articulated in the complaint may create unnecessary confusion in the trial of the case. In addition, a conflict may develop between the attorney for the insured (paid by the insurer) and the intervening insurer. See High PlainsCooperative Association v. Mel Jarvis Construction Co., 137 F.R.D. 285
(D. Neb. 1991).
Eagle's proposed intervention here is not a risk-free endeavor. The jury's job is to determine whether the plaintiff has satisfied his burden of proof on the asserted causes of action. Eagle's proposed interrogatories will provide a distraction from that task. In addition, allowing such intervention may create a potential conflict of interest for the attorney furnished by Eagle to represent Peters. While in some cases the benefits in judicial economy to be gained from intervention might outweigh these risks, the potential benefits in this case are exceedingly difficult to grasp.
The pertinent portions of the policy are quoted in Eagle's brief. The policy covers bodily injury caused by an "occurrence." An "occurrence" is defined as "an accident." The policy excludes conduct "which is either expected or intended by or at the direction of an insured." It is common CT Page 16664 ground that the policy covers negligent conduct and excludes assault and battery. The question of whether the policy covers reckless conduct will be considered in a moment.
Eagle concedes that if the jury delivers a plaintiff's verdict on Count I (negligence), coverage will be established, and no special interrogatories will be needed. On the other hand, Eagle also concedes that if the jury delivers a plaintiff's verdict on Count II (assault and battery), exclusion will be established, and (once again) no special interrogatories will be needed. Under Connecticut law, plaintiff's verdicts under Counts I and II are mutually exclusive. "It is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree . . . are separate and mutually exclusive." American National Fire Insurance Co. v. Schuss,221 Conn. 768, 775, 607 A.2d 418 (1992). For this reason, plaintiff's verdicts could not be delivered on both Counts I and II. Assuming that liability is established at all, there must be a plaintiff's verdict on one of these counts and a defendant's verdict on the other. (If no liability is established in the first place, there will be a defendant's verdict on all counts, and the issue of coverage will be academic.)
The only need for interrogatories to which Eagle can point arises from the existence of Count III (recklessness). Eagle's concern is that a plaintiff's verdict on Count III would leave an ambiguity as to coverage in its wake. (A defendant's verdict on Count III would raise no coverage issues.) This concern is unfounded.
It is well established that, absent specific policy language to the contrary, accident insurance covers reckless conduct in addition to ordinary negligence. 2 ERIC MILLS HOLMES, HOLMES'S APPLEMAN ON INSURANCE, 2D § 9.4 at 534-35 (1996). This rule is required by the fundamental principles of tort law. The term "recklessness" applies "to conduct which is still, at essence, negligent, rather than actually intended to do harm." PROSSER AND KEETON ON THE LAW OF TORTS 212-13 (5th ed. 1984). The Second Restatement of Torts cogently explains that:
 Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing CT Page 16665 from the substantial certainty without which he cannot be said to intend the harm in which his act results.
RESTATEMENT (SECOND) OF TORTS § 500 cmt. f (1965).
Given these principles of law, Eagle's need for special interrogatories evaporates. Plaintiff's verdicts on Count II, on the one hand, and Counts I and III, on the other, are mutually exclusive. If the jury finds assault and battery, it must find the absence of either negligence or recklessness. There will be a plaintiff's verdict on Count II and defendant's verdicts on Counts I and III. In that case, there will be no coverage. If, in contrast, the jury finds negligence, recklessness, or both, it must find the absence of assault and battery. There will be plaintiff's verdicts on Counts I, III, or both, and a defendant's verdict on Count II. In that case, there will be coverage. If the jury finds that the plaintiff has not proven his case in the first place, there will be defendant's verdicts on all three counts. In that case, the question of coverage becomes academic. The need for special interrogatories does not arise under any of these circumstances.
The motion to intervene is denied.
Jon C. Blue Judge of the Superior Court