******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., with whom ESPINOSA, J., joins, concurring and dissenting. Although I agree with the majority that the plaintiffs, Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company, cannot prevail on their alternative grounds regarding the exclusions for workers' compensation obligations and mental abuse set forth in the relevant personal umbrella policy, and that public policy does not prohibit this court from construing that umbrella policy to provide indemnification for common-law punitive damages arising from intentional wrongdoing, I disagree with the majority that the trial court incorrectly limited the scope of discovery and the declaratory judgment trial and, therefore, also disagree with the majority's conclusion that the present case should be remanded for further proceedings. Instead, I would conclude that the trial court properly limited the scope of discovery and properly limited the scope of the declaratory judgment trial, and that, on the basis of the record in the present case, the trial court properly determined that the business pursuits exclusion set forth in the umbrella policy does not apply.

I

## APPLICABILITY OF BUSINESS
## PURSUITS EXCLUSION

On appeal to this court, the defendant Jeffrey S. Pasiak[1] claims that the Appellate Court incorrectly concluded that his claim for coverage falls within the scope of the business pursuits exclusion contained within his umbrella policy. Specifically, the defendant asserts that the "[o]ccurrence" that forms the basis for Sara Socci's underlying tort claim did not arise from her employment or the defendant's business, but instead arose from the defendant's actions in not allowing Socci to leave his home after the encounter with Richard Kotulsky had ended. I agree.

I agree with the standard of review explained by the majority, but emphasize that insurance policy exclusions should be read narrowly. See, e.g., *Heyman Associates No. 1* v. *Insurance Company of Pennsylvania*, 231 Conn. 756, 770, 653 A.2d 122 (1995). As the majority explains: "when construing exclusion clauses, the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim. . . . *Connecticut Ins. Guaranty Assn.* v. *Drown*, 314 Conn. 161, 188, 101 A.3d 200 (2014). While the insured bears the burden of proving coverage, the insurer bears the burden of proving that an exclusion to coverage applies. See *Capstone Building Corp.* v. *American Motorists*

*Ins. Co.*, 308 Conn. 760, 788 n.24, 67 A.3d 961 (2013)." (Internal quotation marks omitted.)

I first look to the terms of the defendant's umbrella policy. The provision at issue in this appeal provides in relevant part that "[e]xcess liability and additional coverages do not apply to . . . [a]n occurrence arising out of the business pursuits or business property of an insured." The definitions provision provides as follows: "[An occurrence] means an accident including continuous or repeated exposure to the same general conditions. It must result in . . . personal injury caused by an insured. . . . Personal injury means: (a) false arrest, false imprisonment, wrongful conviction, wrongful entry; (b) wrongful detention or malicious prosecution; (c) libel, slander, defamation of character, or invasion of rights of privacy." The term "[b]usiness" is defined in the umbrella policy as "a trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time or temporary basis."[2]

"The term 'arising out of' indicates that a causal connection between the alleged injury and the excluded activity must exist . . . ." *Cambridge Mutual Fire Ins. Co.* v. *Sakon*, 132 Conn. App. 370, 380, 31 A.3d 849 (2011), cert. denied, 304 Conn. 904, 38 A.3d 1202 (2012); see also 7 S. Plitt et al., Couch on Insurance (3d Ed. Rev. 2013) § 101:52, p. 101-96 ("use of [the phrase] does not require a direct proximate causal connection but instead merely requires some causal relation or connection"). This court has interpreted the term "arising out of" to be synonymous with "was connected with, had its origins in, grew out of, flowed from, or was incident to." (Internal quotation marks omitted.) *Hogle* v. *Hogle*, 167 Conn. 572, 577, 356 A.2d 172 (1975); see also *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, 308 Conn. 146, 157–58, 61 A.3d 485 (2013). In delineating this standard of causation, this court has described it as more "expansive" than proximate cause. (Internal quotation marks omitted.) *New London County Mutual Ins. Co.* v. *Nantes*, 303 Conn. 737, 759, 36 A.3d 224 (2012); see also *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 48, 801 A.2d 752 (2002).

There are, of course, limits to the reach of the term "arising out of." There must be some minimal *causal* connection between the injury and described subject matter. In *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 308 Conn. 168, this court concluded that the causal connection had not been established when, for purposes of the duty to defend, the complaint in the underlying tort action established only a sequence of events, but not a causal relationship. There, the relevant insurance policy insured injuries arising out of the use of certain property owned by the insured and leased to a tavern keeper consisting of the first floor of the tavern and the use of a nearby parking lot. Id., 149–50. One evening, a tavern patron took a

postprandial detour off the path from the tavern to the parking lot to a retaining wall that overlooked a river. Id., 151. This court emphasized that the cause of the injury in that case was the wooden fence above the retaining wall on property not covered by the policy. Id., 164. It was of no moment that the patron was, just prior to her alleged injury, eating and drinking at the tavern and followed a branch off the path back to the parking lot in order to look at the river. Id., 162–63 n.11.

In *Misiti, LLC*, this court relied on *Edelman* v. *Pacific Employers Ins. Co.*, 53 Conn. App. 54, 59–62, 728 A.2d 531, cert. denied, 249 Conn. 918, 733 A.2d 229 (1999), wherein the Appellate Court concluded that a drunken assault upon a police officer by an innkeeper residing at the inn did not arise out of the use of the inn. In affirming the trial court's determination, the Appellate Court reasoned that "whether the [insurer] had a duty to defend under the policy depends on whether the policy's use of the language 'arising out of the . . . use of . . . the premises' was intended to include or exclude the factual allegations contained in the complaint."[3] Id., 59. The Appellate Court explained that the focus was not the fact that the insured used the premises to consume alcohol "but, rather, on the mechanism that directly caused the plaintiff's injuries, i.e., [the insured's] assault of the plaintiff while he resisted arrest." Id., 61. In other words, the insured's operation of the inn was not the cause of the victim's injuries, the insured's assault, separate and apart from the underlying reason for his presence on the premises, caused the injuries.

In order to determine whether an injury arose out of a business pursuit in the present case, I examine more closely the meaning of the term "business pursuit." This court has explained that the term "business pursuits," in the exclusionary clause of an insurance policy, "contemplates a continuous or regular activity engaged in by the insured for the purpose of earning a profit or a livelihood. The determination of whether a particular activity constitutes a business pursuit is to be made by a flexible fact-specific inquiry." *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, 240 Conn. 26, 33, 688 A.2d 319 (1997). This standard is a useful rubric for distinguishing business pursuits from hobbies. It does not, however, answer the question of whether the conduct from which the injury arose in the present case was connected to a business pursuit.

There are, of course, obvious cases in which the injury occurs as a result of risk created by acts or omissions in the course of performing employment duties. See, e.g., *Worcester Ins. Co.* v. *Fells Acres Day School, Inc.*, 408 Mass. 393, 412, 558 N.E.2d 958 (1990) (claims against two employees of child care facility alleging injuries to children as result of employees' negligent failure to protect and prevent injury from sexual

molestation to children under their care fell within "business pursuits" exclusion of their respective home-owners' insurance policies). But, multifarious acts undertaken throughout the course of one's day could cause an injury. Activities that comprise "business pursuits," as that term is defined in the insurance contract and our case law, are woven into the fabric of every working person's daily life. In order to determine whether the activity comprised a business pursuit requires careful examination.

The critical factor is whether the activity that created the risk furthered a business purpose. See, e.g., *Hanson* v. *General Accident Fire & Life Ins. Corp., Ltd.*, 450 So. 2d 1260, 1261–62 (Fla. App. 1984) (removal from insured's business premises of antenna used for two-way communication with insured's wife "unrelated" to insured's business); *Nationwide Mutual Fire Ins. Co.* v. *Johnson*, 121 N.C. App. 477, 482, 466 S.E.2d 313 (1996) (business pursuits exclusion not applicable where decedent employee used insured employer's new truck and cherry picker, purchased to perform contract work, where decedent was not being paid or trained); *Allstate Ins. Co.* v. *Robinson*, 103 N.C. App. 794, 797, 407 S.E.2d 294 (1991) (fact question whether insured struck matches to help himself see in furtherance of his employment duties thereby triggering exclusion or rather to amuse himself); *U. S. F. & G. Ins. Co.* v. *Brannan*, 22 Wn. App. 341, 342, 350, 589 P.2d 817 (1979) (exclusion applied where insured injured one business associate and killed another in altercation precipitated by dispute over business matter); see also *Cambridge Mutual Fire Ins. Co.* v. *Sakon*, supra, 132 Conn. App. 378–80. The fact that the occurrence took place in a workplace is relevant, but not dispositive of whether the business pursuits exclusion is triggered. See, e.g., *Scheer* v. *State Farm Fire & Casualty Co.*, 708 So. 2d 312, 313 (Fla. App.) ("[n]or does it follow from the fact that this conduct occurred in the work place that it was within the business pursuits exclusion"), review denied, 719 So. 2d 893 (Fla. 1998); *Miller* v. *McClure*, 326 N.J. Super. 558, 563, 570–71, 742 A.2d 564 (App. Div. 1998) (concluding that, where proof of employment relationship was necessary, claim of sexual harassment in workplace by insured supervisor precluded by business pursuits exclusion, but also concluding that additional claims "not dependent on the employment relationship" fell outside exclusion), aff'd, 162 N.J. 575, 745 A.2d 1162 (1999); see also L. Frazier, "The Business Pursuits Exclusion in Personal Liability Insurance Policies: What the Courts Have Done with It," 1970 Ins. L.J. 519, 534 (1970).

On the basis of the foregoing, I would conclude that the business pursuits exclusion in the umbrella policy is ambiguous. Therefore, in interpreting the business pursuits exclusion, I am mindful that "insurance policy exclusions should be read narrowly . . . that insur-

ance policies should be construed in favor of the insured . . . and that policy language must be interpreted so as to reflect the understanding of an ordinary policy-holder." (Citations omitted.) *New London County Mutual Ins. Co.* v. *Nantes*, supra, 303 Conn. 755;[4] see also *Farm Bureau Life Ins. Co.* v. *Holmes Murphy & Assocs., Inc.*, 831 N.W.2d 129, 134 n.7 (Iowa 2013) ("a phrase like 'arising out of' may be given a narrower scope in an exclusion when a court finds the exclusion ambiguous and therefore determines the phrase means 'proximately caused by'"); *South Carolina Farm Bureau Mutual Ins. Co.* v. *S.E.C.U.R.E. Underwriters Risk Retention Group*, 347 S.C. 333, 339–40, 554 S.E.2d 870 (App. 2001) (concluding that narrower construction of arising out of applied to business pursuits exclusion under rule of construction specific to exclusions), reversed on other grounds, 353 S.C. 249, 578 S.E.2d 8 (2003).

Turning to the facts of the present case, and employing our standard rules of construction as noted previously in this opinion, I would conclude, as did the trial court, that the occurrence did not arise out of the business pursuits of the defendant. On the morning of May 9, 2006, Kotulsky's attempted robbery of the defendant's home while Socci was present in the home set off a series of actions that are wholly separate from the business pursuits of the defendant. The defendant's actions, which a jury found injured Socci, were those that occurred after the defendant arrived home from his morning routine. The record, as found by the trial court, demonstrates that these actions were not in furtherance of a business interest of the defendant; rather, his motivation was purely personal—to protect Kotulsky.

The allegations of the complaint in the underlying tort action demonstrate that the "occurrence" that forms the basis of Socci's claims is the act of false imprisonment. Socci testified that Kotulsky barged in to the defendant's home while the defendant was not home, but Socci was there working. The defendant later walked in and was confronted by Kotulsky. Socci testified that she "heard Kotulsky say, 'I loved you. How could you do that? I loved you. I loved her.' . . . I realized that this was about a girl. They were fighting over a girl."

The sole focus of Socci's claim was the events that occurred after Kotulsky's attempted robbery had ended. Socci sought damages for the distress that she suffered due to the defendant's actions, not Kotulsky's attempted robbery. In finding in favor of Socci on her claim, the jury held the defendant liable for his own actions after returning home. Those actions formed the basis for the damage award. Any activities which preceded the defendant returning home, including interactions between Socci and Kotulsky, were not part of the plaintiffs' claim.

It is evident from the record that the defendant's goal after Kotulsky's attempted robbery was to shield Kotulsky from the consequences of his actions by preventing Socci from calling the police. It was the defendant's perfervid desire to protect his friend. Socci testified that the defendant explained that they "couldn't call the police [because] they had been friends for years and years since high school [and] that Pasiak was . . . godfather to [Kotulsky's] children . . . ." While still at the defendant's house, the defendant pulled pictures of Kotulsky off of the walls to show Socci how close the two were to "make [her] understand" why she could not call the police. When asked at trial whether the defendant was protecting her, Socci stated that Pasiak was "protecting his friend." For his part, the defendant said in a statement to the police that the decision whether to inform the police "was a hard decision because of [his] relationship with [Kotulsky]." Additionally, very soon after the police were finally notified, the defendant, rather than follow the police's instructions to help facilitate Kotulsky's arrest, informed Kotulsky that the police were notified and "it's over."

The plaintiffs claim, and the majority appears to agree, that it was clearly erroneous to conclude that the defendant's actions were not, at least in part, motivated by business interests. The record evidence supporting the theory that concern for the reputation of the business animated the defendant's conduct is equivocal at best. To be sure, Socci testified that the defendant made some statements expressing concern that the events of that day could somehow result in harm to his business. Nevertheless, the trial court's conclusion was not clearly erroneous given that substantial, detailed evidence supported the finding that the defendant desired to protect his friend. There was no evidence to connect the defendant's statements about his business to his actions preventing Socci from leaving his home. While Socci testified that she understood the defendant to be protecting his friend, she did not testify that he was protecting his enterprise. Additionally, given the lengths the defendant had gone to protect his friend, it would not be unreasonable to infer that the defendant's expressions of concern for his business were merely attempts to persuade Socci to not call the police by suggesting there would be effects beyond merely criminal consequences for Kotulsky—consequences Socci almost certainly would welcome. Accordingly, I reject the plaintiffs' claim that the trial court's finding regarding the defendant's motivation for preventing Socci from leaving was clearly erroneous.

The Appellate Court and the majority also rely upon the flawed premise that Socci's acquiescence with the defendant's demands was, to some extent, a function of the employee-employer relationship. This is unsup-

ported by the record. Socci testified that she did no additional work that day and testified that she would never be coming back to work. All the while, the defendant repeatedly stated that Socci could not leave because he felt she would call the police. Socci testified that she repeatedly asked the defendant if she could leave and assured him "I just want to be alive, I am not going to tell anyone," to which he replied, "you're not going anywhere until I know you're not going to run out of here freaking out telling everybody." She emphasized that the defendant was adamant about it. By not assuring Socci of her personal safety were she to depart or call the police, he preserved Socci's apprehension that Kotulsky could still cause physical harm to her or her family. Indeed, Socci testified to her apprehension of consequences for disobeying the defendant, stating that she feared if she left without permission "it was like if I had a bomb strapped around my chest and [the defendant] had the button and [if] I ran, he could still press the button. He was using [Kotulsky]. He could completely contact [Kotulsky] at any time: She's run. And it was an instant kill for me and my family. I couldn't do that. That would be insane." In Socci's mind, the prudent course of action was to simply acquiesce to the defendant. This was a function of a fear based relationship, not an employment relationship.[5]

The Appellate Court held, and the plaintiffs assert on appeal to this court, that "the sine qua non of the defendant's tortious conduct was . . . Socci's presence at his business office fulfilling her responsibilities as his employee." *Nationwide Mutual Ins. Co.* v. *Pasiak*, 161 Conn. App. 86, 99, 127 A.3d 346 (2015). Specifically, the plaintiffs assert that Socci was only present at the defendant's home because she worked for his company and that, but for her employment by the defendant's company, she would never have been exposed to Kotulsky or to the defendant's actions thereafter. I disagree. As discussed previously herein, the mere fact alone that an injury occurred in the workplace is insufficient to trigger the business pursuits exclusion. The fact that Socci was working at some point before the defendant committed the tortious actions at issue has nothing to do with the defendant's conduct. Indeed, Socci would have suffered this injury whether she was an employee of the business or not. This was not an internal "workplace altercation" between the defendant and Socci. Indeed, "if the injury arises out of an independent act not performed for employment purposes, the business pursuits exclusion may not apply under those circumstances." 9A S. Plitt et al., Couch on Insurance (3d Ed. Rev. 2015) § 128:17, pp. 128-54 through 128-55. In this circumstance, the actions of the defendant must be considered as independent acts because, as the trial court found, the defendant's actions limiting Socci's ability to leave were motivated by his desire to protect Kotulsky, and not motivated by any business or employ-

ment purpose.

The cause-in-fact, or "but for" cause, standard of causation applied by the Appellate Court stretches the meaning of "arising out of" too far. It is, of course, true that had Socci not been an employee of the defendant, she would not have been present when Kotulsky attempted to rob the defendant's home. Such a broad standard of causation was, however, rejected in *Misiti, LLC*. In that case, but for the tavern patron's use of the tavern that evening, she would not have been injured when she detoured off the path to the parking lot, but the injury did not flow from, or have its origins in, her patronage of the tavern. See *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 308 Conn. 159–60; see also *Edelman* v. *Pacific Employers Ins. Co.*, supra, 53 Conn. App. 61 (injury did not arise out of use of leased property where insured innkeeper, who resided on premises, assaulted police officer). Likewise, in the present case, Socci would not have been injured but for being in the employ of the defendant, but the injury did not flow from, or have its origin in, her employment. Rather, her injury flowed from the defendant's decision to protect Kotulsky by preventing her, as a victim of an attempted armed robbery, from calling the police.

In sum, I disagree with the Appellate Court's conclusion that the plaintiffs carried their burden in proving the business pursuits exclusion in the present case. Rather, I would agree with the majority that the Appellate Court used the wrong standard. I disagree, however, with the majority that the trial court used the wrong standard. In my view, the trial court used the correct standard as established by our case law. Therefore, I would reverse the judgment of the Appellate Court and remand the case to that court with direction to affirm the judgment of the trial court.

II

RIGHT TO A FULL HEARING

The plaintiffs claim, as an alternative ground for affirming the judgment of the Appellate Court, that the trial court incorrectly refused to conduct a full evidentiary hearing on all issues relevant to the coverage claims. Specifically, the plaintiffs claim that the trial court narrowly defined the issues it would consider, prohibited the plaintiffs from calling witnesses at trial, and gave preclusive effect to the findings in the underlying Socci action and, thereby, violated the plaintiffs' due process rights. The plaintiffs claim that, because they were denied a basic right to be heard, they are entitled to de novo review. They argue that because the plaintiffs were "not a party to the Socci action, nor in privity with any party to that action, [they] could not obtain a full and fair hearing on the coverage claims in the [declaratory judgment] action without the freedom

to fully develop the record and obtain the court's independent review." Essentially, the majority agrees with this position and remands the case for a full trial on the business pursuits exclusion. I disagree and would conclude that the trial court properly defined the scope of the trial in this declaratory judgment action. Essentially, the claim is no different than any other ruling by a trial judge concerning the admissibility of evidence. I therefore evaluate the claim under an abuse of discretion standard. *State* v. *Dehaney*, 261 Conn. 336, 354–55, 803 A.2d 267 (2002), cert. denied, 537 U.S. 1217, 123 S. Ct. 1318, 154 L. Ed. 2d 1070 (2003).

The following additional facts and procedural history are relevant to my resolution of this issue. On July 9, 2012, the plaintiffs filed a memorandum of law regarding the scope of the declaratory judgment trial. The plaintiffs claimed that they were "entitled to . . . de novo fact finding" in the present case. The defendant claimed that the trial was to be based "solely and completely on the facts presented" in the underlying civil trial.

On August 9, 2012, the trial court denied the plaintiffs' request for a trial de novo. The trial court framed the matter as one of collateral estoppel and concluded that the plaintiffs "cannot now ask the court to relitigate what has already been fully and fairly litigated." The trial court noted that the plaintiffs did not convey to the court precisely what evidence it sought to present to the court that had not already been presented in the Socci action. The trial court criticized the "complacency" of the plaintiffs for, in the underlying action, not "actively [pursuing] in greater detail the issues affecting the exclusions in the [umbrella] policy." The trial court noted that issues regarding intentional acts, wilful violation of the law, and workers' compensation were properly raised and necessarily determined in the underlying action "as not applicable to negate liability." The trial court concluded that it would deny the plaintiffs' request "for a de novo hearing to permit unrestricted testimony and evidence of the issues [already] litigated in the underlying trial . . . ."

The trial was held on August 30, 2012. On the day of the trial, the plaintiffs filed a "trial brief" with the court. In their brief, the plaintiffs requested findings of fact and conclusions of law on seven listed issues. The issues listed can be separated into two categories. First, the plaintiffs sought an allocation of liability found on the general verdict by the jury in the underlying action.[6] Second, the plaintiffs sought findings on the applicability of certain enumerated exclusions. The trial court indicated to plaintiffs' counsel that it would allow the presentation of evidence and testimony and consider any objection in turn. The plaintiffs submitted a number of exhibits, including the complaint, transcript, jury charge, and verdict form of the Socci action, the defen-

dant's pleas of nolo contendere to certain criminal charges, limited deposition testimony from the Socci action, certain expert testimony, and response to a request for production of documents regarding Socci's employment.[7]

After the submission of exhibits, the plaintiffs' counsel attempted to call Socci as a witness to testify. Upon inquiry by the trial court, counsel for the plaintiffs explained that he intended for Socci to testify to the issues enumerated in the brief so that the court could make a finding as to whether the defendant engaged in intentional conduct to cause emotional distress or false imprisonment and a finding on negligence. Counsel for the defendant objected and sought clarification as to what additional evidence the plaintiffs sought from Socci that was not already elicited in the underlying trial. Counsel for the plaintiffs responded that he wanted the court to assess the credibility of Socci's testimony. The court rejected this proffer, reasoning that the jury made that determination in the underlying action. The court emphasized that the general verdict in the underlying action meant that there was a finding in favor of Socci on every issue. The court clarified that the plaintiffs had been restricted to presenting evidence on issues that were in addition to those raised in the underlying action, i.e., issues pertaining to exclusions.

Moving to exclusion issues, the counsel for the defendant demanded to know precisely what additional testimony the plaintiffs sought from Socci. Other than asking Socci questions that would elicit legal conclusions,[8] counsel for the plaintiffs indicated that he would not elicit any additional testimony not already presented in the underlying action with respect to the business pursuits exclusion. Socci did not testify.[9] Counsel for the plaintiffs did not proffer any other testimony as to any of the other exclusions.[10]

After the trial, the parties submitted posttrial memoranda. In their brief, the plaintiffs "incorporated by reference" arguments made in their motion for summary judgment. In detail, the plaintiffs raised coverage issues pertaining only to the applicability of exclusions.[11] The plaintiffs did not make any argument as to the allocation of liability in their posttrial brief.

In its memorandum of decision, the court emphasized that it gave the plaintiffs the opportunity to present evidence on coverage issues. Although the plaintiffs did not address the issue in their posttrial brief, the trial court discussed the allocation of liability and determined that the "jury verdict consist[ed] of a finding of personal injury for negligent as well as intentional acts, all of which may be subject to indemnification." In other words, the court concluded that the defendant's actions that caused damages to Socci were an "occurrence" within the meaning of the umbrella policy. As previously discussed herein, the court further determined that

none of the exclusions asserted by the plaintiffs applied to the defendant's conduct.

Against this procedural backdrop, I turn to whether the plaintiffs were entitled to a trial de novo on the coverage issue in this declaratory judgment action. The trial court correctly, albeit for the wrong reasons, concluded that the plaintiffs were not entitled to retry the underlying case in the present declaratory judgment trial. The trial court correctly defined the scope of the presentation of evidence in the trial. Contrary to the plaintiffs' claim, they had a fair opportunity to present their case with respect to the disputed coverage issues. While I agree with the majority on the scope of the new hearing and the standard for such cases, I disagree, respectfully, that a new hearing is necessary in the present case. The plaintiffs, as determined by the trial court, were allowed to present evidence on the exclusion issues, however, they never formally indicated to the trial court what evidence they intended to present. In my view, the plaintiffs are now being given a "second bite at the apple" and their position constitutes an ambuscade of the trial court. Unfortunately, through its ruling, the majority now condones the plaintiffs' actions.

The issue of whether the plaintiffs have a duty to indemnify is a contractual one. See, e.g., *New London County Mutual Ins. Co.* v. *Nantes*, supra, 303 Conn. 748–49. According to the umbrella policy, the plaintiffs agreed to "pay for damages an insured is legally obligated to pay due to an occurrence" subject to certain exclusions. There is no doubt that the defendant in the present case owes damages that he is legally obligated to pay to Socci. The issue for the trial court was whether and to what extent the damages were due to an occurrence, and, if so, whether and to what extent coverage was precluded by a relevant exclusion.

With respect to the question of whether the damages the defendant caused Socci were due to an occurrence as defined by the terms of the umbrella policy, the plaintiffs were, in essence, seeking an allocation of liability among the counts in the complaint in the underlying tort action to determine to what extent the defendant's liability is covered by the umbrella policy. As the trial court noted in its memorandum of decision, the general verdict in the underlying action greatly adds to the difficulty in allocating liability. Indeed other courts have observed the difficulty of allocating liability in cases where the liability is determined by general verdict. See, e.g., *Automax Hyundai South, L.L.C.* v. *Zurich American Ins. Co.*, 720 F.3d 798, 809 (10th Cir. 2013) (noting an "epistemological barrier to determining the jury's grounds for judgment"); *Board of County Supervisors* v. *Scottish & York Ins. Services, Inc.*, 763 F.2d 176, 179 (4th Cir. 1985) (describing the "winnowing out the specific grounds upon which the jury based its

general verdict" as an "impossibility"). Nevertheless, courts are skeptical about retrying the underlying case. See, e.g., *TranSched Systems Ltd.* v. *Federal Ins. Co.*, 67 F. Supp. 3d 523, 534 (D.R.I. 2014) (describing relitigating the underlying tort action as "uneconomical" and ordering mediation). Indeed, the plaintiffs have not cited a single case that supports the contention that in circumstances such as the present case the insurer is entitled to retry the underlying case.

One treatise has specifically rejected retrial on the issue of liability. 1 A. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds, § 6:26, pp. 6-280 through 6-282 (6th Ed. 2013). "When the dispute is over which causes of action or allegations were found to be meritorious, only one question should be addressed: the factual and legal grounds on which the prior judgment was entered. The parties, therefore, should not be allowed to retry the liability issue." (Footnote omitted.) Id.; see also *FountainCourt Homeowners' Assn.* v. *FountainCourt Development, LLC*, 360 Or. 341, 357, 380 P.3d 916 (2016) ("[i]n other words, an insurer cannot, in a subsequent proceeding, retry its insured's liability"). Rather, the parties "should look to the pleadings, the jury charge, any written opinions, and the trial transcript in the underlying litigation. They should not, for example, be allowed to call as witnesses the people that testified at the earlier trial . . . ." (Footnote omitted.) 1 A. Windt, supra, p. 6-282; accord *Carolina Casualty Ins. Co.* v. *Nanodetex Corp.*, 733 F.3d 1018, 1026 (10th Cir. 2013). Indeed, these principles are not inconsistent with Connecticut law. "[T]he duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." (Internal quotation marks omitted.) *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 688, 846 A.2d 849 (2004); see also id. ("the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct *actually* was covered by the policy" [emphasis in original]).

Counsel for the plaintiffs' own representation to the trial court as to the nature and purpose of Socci's anticipated testimony in the trial in the present case supports my conclusion that permitting relitigation on the issue of liability is unwarranted. Counsel for the plaintiffs sought to present Socci's testimony initially on the issue of liability. When pressed, the counsel for the plaintiffs could not articulate precisely what testimony he sought to present that had not already been presented in the underlying trial. Rather, the plaintiffs' counsel stated that it sought "the court's determination as to credibility and the weight to be given the testimony . . . ." To present Socci or other witnesses to testify a second time to the very issues at the heart of the underlying tort action would simply be an exercise in presenting cumulative evidence not needed for resolution of the issue of whether, or to what extent, damages were

caused by an occurrence.

Contrary to the reasoning of the trial court, the rationale for limiting the scope of trial is not grounded in the doctrine of collateral estoppel. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel . . . prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties [or those in privity with them] upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 223, 982 A.2d 1053 (2009).

Collateral estoppel does not apply to the plaintiffs in this case for two reasons. First, the plaintiffs in the present case were not in privity with the defendant in the underlying tort action. Second, because the general verdict in that case renders the basis of the jury's determination unclear, it cannot be said that the relevant factual issues were necessarily determined and, therefore, such issues cannot have preclusive effect in the present case.

The principal inquiry is whether the plaintiffs were in privity with the defendant in the underlying action. "Privity is a difficult concept to define precisely. . . . There is no prevailing definition of privity to be followed automatically in every case. It is not a matter of form or rigid labels; rather it is a matter of substance. In determining whether privity exists, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." (Citation omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 813–14, 695 A.2d 1010 (1997).

Defending an insured under a reservation of rights has been recognized as sufficient to dispel privity for purposes of collateral estoppel. See, e.g., *State Farm Fire & Casualty Co.* v. *Mabry*, 255 Va. 286, 290, 497 S.E.2d 844 (1998). When an insurer defends an insured under a reservation of rights, it creates an inherent conflict of interest preventing the insurer from asserting its policy defenses. See *Allstate Ins. Co.* v. *Blount*, 491 F.3d 903, 910 (8th Cir. 2007) (applying Missouri law); see also 2 Restatement (Second) Judgments § 58 (2)

(1982) ("[a] 'conflict of interest' . . . exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the indemnitor's obligation to indemnify and another which is not"). Thus, while it may well be true that both insured and insurer have an interest obtaining a verdict for the defendant in the tort action, it cannot be said that the parties represent the same legal rights.[12]

In addition, collateral estoppel does not apply against the plaintiffs in the present case because the issues were not "actually and necessarily determined" in the underlying action. (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 376, 727 A.2d 1245 (1999). For collateral estoppel to apply, "the fact sought to be foreclosed by [the] defendant must necessarily have been determined in his favor in the prior trial; it is not enough that the fact may have been determined in the former trial." (Internal quotation marks omitted.) Id., 377. "Because a verdict to which the general verdict rule[13] applies is necessarily one that can rest on different grounds, there is no way to know definitively that the verdict satisfied the criteria required to invoke the collateral estoppel doctrine." (Footnote added.) Id., 376–77.

I disagree with the trial court that, in the underlying action, the insurers' failure to intervene or the defendant's counsel's failure to seek special interrogatories alters the analysis with respect to collateral estoppel. First, although this court has not decided the issue until today, there is broad consensus in our Superior Court and other jurisdictions that an insurer cannot intervene as of right for any purpose because their interest was contingent until a verdict had been rendered for a covered claim. See *Seaco Ins. Co.* v. *Devine Bros., Inc.*, Superior Court, judicial district of Fairfield, Docket No. CV-00-0374721-S (July 30, 2003) (35 Conn. L. Rptr. 235, 240 n.3) (citing numerous decisions from our Superior Court and other jurisdictions denying insurer intervention as of right because insurer's interest is not direct, but rather contingent on outcome of case). I agree with these cases. There is a split of authority in our Superior Courts as to whether permissive intervention would be proper even if solely for the purpose of submitting interrogatories.[14]

Second, the fact that the defendant's counsel did not seek special interrogatories cannot simply be imputed to the plaintiffs, even though they furnished the defense. "[W]e have long held that *even* when an insurer retains an attorney in order to defend a suit against an insured, the attorney's only allegiance is to the client, the insured." (Emphasis in original.) *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 61, 730 A.2d 51 (1999). "[E]ven when an attorney is compensated or expects to be compensated by a liabil-

ity insurer, [his or] her duty of loyalty and representation nonetheless remains *exclusively* with the insured." (Emphasis added.) *Higgins* v. *Karp*, 239 Conn. 802, 810, 687 A.2d 539 (1997). Even if the decision not to request special interrogatories could somehow be imputed to the insurer in these circumstances, such a decision does not convert the general verdict into a sword applied against the insurer. See *Dowling* v. *Finley Associates, Inc.*, supra, 248 Conn. 376 n.8. Thus, the plaintiffs' lack of participation in the underlying action was not inappropriate such that the findings in that case should be given preclusive effect against the plaintiffs in the present case.

Turning to the scope of the trial in the present case, the trial court admitted the transcripts from the underlying action, the pleadings, the verdict form, and the jury charge. This was all the trial court needed to determine whether there was coverage in the present case to consider the issue of allocating liability.[15] With respect to the issue of the applicability of relevant exclusions, the presentation of additional testimony or evidence may be necessary for an insurer to carry its burden. In order to prove that a coverage exclusion applies, an insurer may seek to develop facts that were not relevant to the underlying tort action. The record in the underlying tort action likely will not adequately speak to exclusion issues. In the present case, the plaintiffs did indeed submit additional evidence regarding the exclusions. Again, the trial court provided counsel for the plaintiffs' an opportunity to explain what additional testimony he intended to present in support of their claims that coverage was excluded. Counsel for the plaintiffs did not seek to present any other oral testimony.

All in all, the trial court gave the plaintiffs a fair hearing in this declaratory judgment action. It properly weighed the burden on judicial resources, and the parties, in declining to permit the plaintiffs to present evidence already submitted in the underlying action. The trial court permitted the plaintiffs to present new or additional evidence related to issues not relevant in the underlying tort action. Accordingly, I would conclude that the trial correct correctly established the scope of the trial in the present case.

### III

### PLAINTIFFS' OPPORTUNITY TO DEVELOP THEIR CASE

The plaintiffs claim, as an additional ground for affirming the judgment of the Appellate Court, that they were denied the opportunity to develop their case, in particular their coverage defenses, through both discovery and trial evidence. Because this ground appears to be very similar to the previous issue, although it may encompass rulings on discovery, I again review it under an abuse of discretion standard. *State* v. *Dehaney*,

supra, 261 Conn. 354–55.

Specifically, the plaintiffs claim that if permitted to conduct appropriate discovery, they might have established that the defendant's motivations in detaining and threatening Socci were business related. Similarly, they might have learned whether Socci's hours were ultimately to be increased beyond the twenty-six hour threshold, where workers' compensation insurance is required, even for a domestic employee. Instead, the plaintiffs assert they were left with a record that did not fully address all of the coverage issues and included a general verdict. As a result, the plaintiffs claim that the trial court's "limiting decisions were inherently unfair to [them], and fundamentally against the interests of justice."

While the plaintiffs assert that they were denied "virtually every form of discovery it sought," they never identify a discovery request or ruling with specificity. They claim that they were not allowed to depose "key witnesses" such as the defendant and Socci. The plaintiffs deposed the defendant on the eve of trial on issues regarding his business, workers' compensation, and Socci's employment. Counsel for Socci sought a protective order and the plaintiffs failed to explain to the court why it needed further information when it had her trial testimony. Thereafter, the court issued a protective order. Nothing prevented the plaintiffs from calling the defendant as a trial witness. There were also lengthy discussions about Socci testifying. Her counsel sought an order of protection due to the fragility of her mental state with respect to these events, but she agreed to a stipulation of facts. The plaintiffs refused to do so. Because the plaintiffs could not articulate why it needed live testimony, the court was unwilling to allow the testimony and issued a protective order.

In view of the plaintiffs' failure to identify a specific ruling of the trial court regarding discovery, other than the testimony of both the defendant and Socci, my review of the record leads me to conclude that the trial court properly exercised its discretion in this matter. There was no ruling that constituted an abuse of discretion. I, therefore, would reject the plaintiffs' claims in this regard.

To summarize, I would conclude that the trial court correctly determined that the business pursuits, abuse, and workers' compensation exclusions did not apply in the present case. Additionally, I believe that the trial court correctly determined that the plaintiffs were not entitled to a de novo fact finding hearing on all issues in the present declaratory judgment action. Finally, I would conclude that the trial court did not abuse its discretion in denying certain discovery requests.

Therefore, I would reverse the judgment of the Appellate Court and remand the matter to that court with

direction to affirm the judgment of the trial court.

I respectfully concur and dissent.

[1] I note that the complaint in the present declaratory judgment case names three additional defendants: Pasiak Construction Services, LLC, Sara Socci, and Kraig Socci. I further note that Kraig Socci's sole claim in the underlying tort action sounds in loss of consortium and is, therefore, derivative of the claims presented by Sara Socci. For the sake of simplicity, I refer to Pasiak as the defendant and to Sara Socci by name. See footnote 1 of the majority opinion.

[2] In view of the allegations made in the underlying tort action, and the general verdict rendered by the jury in that case, it is conceivable that the jury may have found that the act of false imprisonment either occurred in the defendant's house, in his car, in a subsequent meeting with a mutual friend, or in a combination of all three locations.

[3] As with *Misiti, LLC*, in *Edelman* the Appellate Court analyzed the "arising out of" language in the context of the broader duty to defend and still focused on the "mechanism" of the injury rather than the sequence of events leading to the exercise of said mechanism. *Edelman* v. *Pacific Employers Ins. Co.*, supra, 53 Conn. App. 61. Thus, as *Edelman* demands an analytical focus on the "mechanism" of injury in the broad duty to defend setting, an analysis of the narrower duty to indemnify—and the exclusions applicable thereto—should, at a minimum, require an equally narrow analytical focus as to the cause of injury.

[4] The majority explains that "arising out of" has been given an expansive definition even when used in coverage exclusions and cites to *New London County Mutual Ins. Co.* v. *Nantes*, supra, 303 Conn. 753, in support of its position. In *Nantes*, this court explicitly acknowledged that the principles of insurance law demonstrate that "insurance policy exclusions should be read narrowly . . . that insurance policies should be construed in favor of the insured . . . and that policy language must be interpreted so as to reflect the understanding of an ordinary policyholder." (Citations omitted.) Id., 755. In *Nantes*, this court explained that these principles only apply when the exclusion provision is ambiguous, and that it only applied the expansive definition of "arising out of the . . . use" in that case because it determined that the exclusion was not ambiguous. Id., 755–56.

[5] The majority claims that Socci actually viewed her compliance with the defendant's requests that day to be performance of employment duties. Socci did, in fact, testify that she "worked all day, so [the defendant] wouldn't make that one phone call to tell Kotulsky that I called the police." This "work" was not in service of her employer; rather, it was a purely personal endeavor—a deliberate effort to make sure the defendant did not give her up to Kotulsky. She not only complied with the defendant, she endeavored to put on a calm demeanor because "he told me I wasn't going to leave unless he knew I wasn't going to run out of there freaking out and telling everyone, so I knew that I had to show him that I wasn't going to tell anyone, that I was fine like they said I was, that it wasn't a big deal like they said it was." She explained that this was no easy task: "I didn't want to be calm after being threatened [by Kotulsky]. After having my family threatened . . . . You can't be calm after that." These efforts were undoubtedly mentally taxing "work," but cannot fairly be described as work for the defendant or his business.

[6] Specifically, the plaintiffs sought findings of fact and conclusions of law as to the following: (1) "[w]hether Pasiak either engaged in intentional conduct to falsely imprison [Socci] or inflicted emotional distress upon [Socci], or both, and is such conduct covered or excluded from coverage under the [u]mbrella [p]olicy as argued in Nationwide's [motion for summary judgment]"; and (2) "[whether] Pasiak commit[ted] any negligence in addition to intentional [torts] and if so what was that negligent conduct, and is such negligence covered or excluded from coverage under the [u]mbrella [p]olicy as argued in Nationwide's [motion for summary judgment . . . ." (Footnote omitted.)

[7] On the Monday before trial, an off the record conference was held. At that conference, the trial court granted a one day continuance of trial for a deposition and ordered certain discovery. Despite the fact that the court indicated in its memorandum of decision that matters pertaining to workers' compensation were "necessarily determined" in the underlying trial, the deposition and production pertained to Socci's employment and apparently were relevant to the issue of the workers' compensation exclusion.

[8] Counsel for the plaintiffs suggested he would ask Socci if the defendant

was acting in furtherance of business pursuits when he prohibited her from leaving his house and if the defendant was acting "in a way that was abusive" to her.

[9] At trial, Socci's counsel expressed concern about presenting testimony from Socci because testifying would exacerbate her emotional distress.

[10] The trial court excluded certain documentary evidence, but the plaintiffs have not appealed from that decision.

[11] The plaintiffs indicated that the applicability of exclusions were the only issues that appeared unresolved after the denial of their motion for summary judgment and the decision regarding the scope of trial.

[12] This is especially so in actions alleging both negligent and intentional conduct. Where a personal liability policy contains an intentional acts exclusion, an insurer has an interest in proving such conduct, whereas an insured would rather avoid establishing such facts so that he does not lose his right to indemnification.

[13] "Under the general verdict rule, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels. . . .

"On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated." (Citation omitted; internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, supra, 248 Conn. 371. Generally speaking, in order to avoid the effects of the general verdict rule, a party "may elicit the specific grounds for the verdict by submitting interrogatories to the jury." (Internal quotation marks omitted.) Id., 372.

[14] See *Wright* v. *Judge*, Superior Court, judicial district of New London, Docket No. CV-08-5006839-S (October 5, 2010) (50 Conn. L. Rptr. 738, 738–39) (denying motion to intervene for limited purpose of submitting special interrogatories, noting that issues of liability in underlying case did not require determination of coverage issues raised by insurer in order to be resolved, that allowing intervention for this purpose would directly insert into action issues of insurance which are generally not admissible evidence in tort case, and that, therefore, allowing insurer to interpose interrogatories "would potentially create complications both for the plaintiff . . . and counsel for [the] insured"); *Hunter* v. *Peters*, Superior Court, judicial district of New Haven, Docket No. 423946 (December 13, 2001) (31 Conn. L. Rptr. 141, 142) (recognizing that permissive intervention for limited purpose of submitting special interrogatories to determine whether insurance policy covers defendant's alleged conduct could be proper in some cases, but was not in that case because mutually exclusive potential bases of jury verdict alleviated need for interrogatories); *Murphy* v. *Kapura*, Superior Court, judicial district of Tolland, Docket No. CV-95-56977-S (May 19, 1995) (14 Conn. L. Rptr. 312, 313) (denying insurer's request to intervene in action against insured alleging negligent assault and intentional assault for purpose of submitting interrogatory to determine whether intentional act exclusion of policy precluded coverage under rationale that intervention could prejudice parties and insurer had alternative means of establishing whether intentional assault occurred through separate declaratory judgment action).

[15] The plaintiffs did not address this issue in their posttrial brief, apparently believing the issue was decided at summary judgment or in the trial court's decision regarding the scope of trial. Nevertheless, the trial court discussed the issue in its memorandum of decision. The plaintiffs do not claim on appeal that the trial court improperly determined whether, or to what extent, the damages were caused by an occurrence under the umbrella policy. I express no opinion about the trial court's analysis of that issue. My discussion herein is limited to simply whether the trial court correctly concluded that the plaintiffs were not entitled to a trial de novo on all issues.